**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

A.D., R.G., T.B., E.W., M.H., S.B., C.C., K.F., C.M., A.O., A.H., and C.A., *individually and on behalf of all others similarly situated*,

*Plaintiffs*,

v.

ASPEN DENTAL MANAGEMENT, INC.,

*Defendant*.

Case No. 1:24-cv-01404

Judge Virginia M. Kendall

# PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS

**ALMEIDA LAW GROUP LLC**
David S. Almeida
Britany A. Kabakov
849 W. Webster Avenue
Chicago, Illinois 60614
Ph: (312) 576-3024
david@almeidalawgroup.com
britany@almeidalawgroup.com

**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
Brandon M. Wise
One U.S. Bank Plaza
Suite 1950
St. Louis, Missouri 63101
Ph: (314) 833-4825
bwise@peifferwolf.com

**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
Andrew Ready Tate
(GA Bar #518068)*
235 Peachtree Street NE
Suite 400
Atlanta, Georgia 30303
Ph: (404) 282-4806
atate@peifferwolf.com

*admitted *pro hac vice*

*Counsel for Plaintiffs & the Classes*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........ 1
LEGAL STANDARD ........ 4
ARGUMENT ........ 4
I. PLAINTIFFS' FEDERAL WIRETAP ACT CLAIM IS NOT FORECLOSED BECAUSE THE CRIME-TORT EXCEPTION APPLIES ........ 4
A. Plaintiffs Allege that Defendant Intercepted the Contents of their Communications. ........ 4
B. The One-Party Exception Does Not Apply. ........ 5
C. Aspen's Cited Authority Fails to Persuade When Compared to Recent Decisions. 8
II. PLAINTIFFS ALLEGE VIOLATIONS OF STATE WIRETAP ACTS. ........ 11
A. Defendant Intercepted "Contents" under all State Wiretap Acts. ........ 11
B. Plaintiffs State a Viable Claim under the Illinois Eavesdropping Act. ........ 14
C. Plaintiffs Allege Violations of the Florida Security of Communications Act. ........ 16
D. Plaintiffs Plausibly Allege a Claim under the Pennsylvania Wiretap Act. ........ 18
E. Plaintiffs Allege Violations of the Massachusetts Wiretap Act. ........ 19
III. PLAINTIFFS STATE VIABLE CONSUMER PROTECTION ACT CLAIMS. ........ 23
A. Plaintiffs State a Viable Claim under the Illinois Consumer Fraud Act. ........ 23
B. Plaintiffs Allege Violations of the Washington Consumer Protection Act. ........ 25
C. Plaintiffs Allege a Claim under California's Unfair Competition Law. ........ 27
D. Plaintiffs' California CMIA Claim should not be Dismissed. ........ 29
IV. PLAINTIFFS' COMMON LAW CLAIMS SURVIVE A MOTION TO DISMISS. ........ 32
A. Plaintiffs Adequately Allege Negligence Because It Is Based on More Than Physician-Patient Confidentiality. ........ 32
B. Plaintiffs have Alleged Detriment for their Unjust Enrichment Claim. ........ 34
CONCLUSION ........ 35

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Angelo v. Moriarty*,
2016 WL 640525 (N.D. Ill. Feb. 18, 2016) ........ 15

*Armbrister v. Pushpin Holdings, LLC*,
896 F. Supp. 2d 746 (N.D. Ill. 2012) ........ 23

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 4

*Aspelund v. Olerich*,
56 Wash. App. 477 (1990) ........ 27

*Bell Atl. Corp. v. Twombly*,
550 U.S. 555- (2007) ........ 4

*Bigelow v. Virginia*,
421 U.S. 809 (1975) ........ 11

*Brown v. Google LLC*,
2021 WL 6064009 (N.D. Cal. 2021) ........ 28

*Brown v. Google LLC*,
2023 WL 5029899 (N.D. Cal. 2023) ........ 29

*Buckley v. Santander Consumer USA, Inc.*,
2018 WL 1532671 (W.D. Wash. Mar. 29, 2018) ........ 26

*Cannon v. City of Anna, Illinois*,
2023 WL 2349344 (S.D. Ill. Mar. 3, 2023) ........ 15

*Cleary v. Philip Morris, Inc.*,
656 F.3d 511 (7th Cir. 2011) ........ 34

*Commonwealth v. Morris*,
212 N.E.3d 812 (2023) ........ 20

*Cousin v. Sharp Healthcare*,
2023 WL 8007350 (S.D. Cal. Nov. 17, 2023) ........ passim

*Crowley v. CyberSource Corp.*,
166 F. Supp. 2d 1263 (N.D. Cal. 2001) ........ 17

*D'Angelo v. Penney OPCO LLC,*
2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) ........................................................... 22

*Derfus v. City of Chicago*,
42 F. Supp. 3d 888 (7th Cir. 2014) ........................................................................... 4

*Desnick v. Am. Broad. Cos., Inc.*,
44 F.3d 1345 (7th Cir. 1995) ................................................................................ 6, 9

*Deteresa v. Am. Broadcasting Cos., Inc.*,
121 F.3d 460 (9th Cir. 1997) ..................................................................................... 5

*Dillon v. Mass. Bay Transp. Auth.*,
729 N.E.2d 329 (Mass. App. Ct. 2000) .................................................................... 21

*Doe v. Meta Platforms, Inc.*,
2023 WL 5837443 (N.D. Cal. Sept. 7, 2023) .................................................. 8, 12, 35

*Doe v. Regents of Univ. of California*,
672 F. Supp. 3d 813 (N.D. Cal. 2023) ................................................................. 2, 32

*Doe v. Smith*,
429 F.3d 706 (7th Cir. 2005) ..................................................................................... 8

*Durpetti v. Menard, Inc.*,
2023 WL 4864994 (N.D. Ill. July 30, 2023)............................................................. 33

*E.H. v. Meta Platforms, Inc.*,
2024 WL 557728 (N.D. Cal. Feb. 12, 2024) ........................................................ 3, 29

*Eisenhower Med. Ctr. v. Super. Ct.*,
226 Cal. App. 4th 430 (2014) .................................................................................. 30

*Gilday v. Dubois*,
124 F.3d 277 (1st Cir. 1997)..................................................................................... 19

*Goldstein v. Costco Wholesale Corp.*,
559 F.Supp.3d 1318 (S.D. Fla. 2021) ............................................................ 12, 17, 18

*Goodman v. Illinois Dep't of Fin. & Pro.,*
*Regul.*, 430 F.3d 432 (7th Cir. 2005) ......................................................................... 11

*Gragg v. Orange Cab Co., Inc.*,
942 F.Supp.2d 1111, 1118-19 (W.D. Wash. 2013) ................................................... 26

*Grant v. South Roxana Dad's Club*,
381 Ill.App.3d 665 (2008) ......................................................................................... 32

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
105 Wn.2d 778 (1986) .......... 25

*Hartley v. Univ. of Chicago Med. Ctr.*,
2024 WL 1886909 (N.D. Ill. Apr. 30, 2024) .......... 2, 3, 6, 10

*Henyard v. MV Transp.*,
2019 WL 1399953 (N.D. Ill. Mar. 28, 2019) .......... 16

*Huong Hoang v. Amazon.com, Inc.,*
2012 WL 1088165 (W.D. Wash. Mar. 30, 2012) .......... 26

*Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*,
2007 WL 4394447 (E.D. Pa. Dec. 13, 2007) .......... 17

*In re Anthem, Inc. Data Breach Litig.*,
2016 WL 3029783 (N.D. Cal. May 27, 2016) .......... 29

*In re Arthur J. Gallagher Data Breach Litig.*,
631 F. Supp. 3d 573 (N.D. Ill. 2022) .......... 33

*In re DoubleClick*,
154 F. Supp. 2d 497, 500, 506 (S.D.N.Y. 2001) .......... 8

*In re Facebook Privacy Litig.*,
572 F. App'x 494 (9th Cir. 2014) .......... 26

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 22

*In re Grp. Health Plan Litig.*,
2023 WL 8850243 (D. Minn. Dec. 21, 2023) .......... 5, 7, 35

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
440 F. Supp. 3d 447 (D. Md. 2020) .......... 26, 29

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
603 F. Supp. 3d 1183 (S.D. Fla. 2022) .......... 29

*In re Meta Healthcare Pixel Litigation*,
2024 WL 333883 (N.D. Cal. Jan. 29, 2024) (denying motion .......... 31

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 10, 13, 14

*In re Thorpe*,
881 F.3d 536 (7th Cir. 2018) .......... 15

*In re Zynga Privacy Litigation*,
750 F.3d (9th Cir. 2014) .......... 13

*Jacome v. Spirit Airlines, Inc.*,
2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021) .......... 16, 17

*James v. Walt Disney Co.*,
2023 WL 7392285 (N.D. Cal. Nov. 8, 2023) .......... 16

*Kane v. Univ. of Rochester*,
2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) .......... 3, 6, 35

*Katz-Lacabe v. Oracle Am., Inc.*,
2023 WL 6466195 (N.D. Cal. Oct. 3, 2023) .......... 13, 18, 35

*Katz-Lacabe v. Oracle America, Inc.*,
2024 WL 1471299 (N.D. Cal. Apr. 3, 2024) .......... 10, 11

*Klein v. Facebook, Inc.*,
580 F. Supp. 3d 743 (N.D. Cal. 2022) .......... 29

*Konop v. Hawaiian Air., Inc.*,
302 F.3d 868 (9th Cir. 2002) .......... 22

*Krywin v. Chicago Transit Authority*,
238 Ill.2d 215 (2010) .......... 32

*Kurowski v. Rush Sys. for Health*,
2023 WL 4707184 (N.D. Ill. July 24, 2023) .......... 16

*Kurowski v. Rush Sys. for Health*,
2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) .......... 3, 6, 7, 10

*Kurowski v. Rush Sys. for Health,*
659 F. Supp. 3d 931 (N.D. Ill. 2023) .......... 30

*Makkinje v. Extra Space Storage, Inc.*,
2022 WL 80437 (M.D. Fla. Jan. 7, 2022) .......... 16

*Manhattan Cmty. Access Corp. v. Halleck*,
587 U.S. 802 (2019) .......... 11

*MarinHealth Med. Grp., Inc.*,
2024 WL 217841 (Cal.) .......... 35

*Marquis v. Google, Inc.*,
2015 WL 13037257 (Mass. Super. Ct. Feb. 13, 2015) .......... 20

*Mekhail v. N. Mem'l Health Care*,
2024 WL 1332260 (D. Minn. Mar. 28, 2024) .................... 3, 6

*Nguyen v. Doak Homes, Inc.*,
140 Wash. App. 726 (2007) .................... 27

*O'Sullivan v. NYNEX Corp*,
687 N.E.2d 1241 (Mass. 1997) .................... 21

*Panag v. Farmers Ins. Co. of Wash.*,
166 Wn.2d 27 (2009) .................... 25

*Platt v. Brown*,
872 F.3d 848 (7th Cir. 2017) .................... 4

*R.C. v. Walgreen Co.*,
2024 WL 2263395 (C.D. Cal. May 9, 2024) .................... 3, 7, 10

*Regents of California v. Superior Court*,
220 Cal. App. 4th 549, 570 (2013) .................... 31

*Rubio v. Capital One Bank*,
613 F.3d 1195 (9th Cir. 2010) .................... 27, 28

*Sanchez v. Walmart Inc.*,
2024 WL 2132426 (N.D. Ill. May 13, 2024) .................... 23

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943, 954 (N.D. Cal. 2017) .................... 22

*Sutter Health v. Superior Court* ,
227 Cal. App. 4th 1546, 1553 (2014) .................... 31

*Swiatek v. CVS Pharmacy, Inc.*,
2024 WL 1328801 (N.D. Ill. Mar. 28, 2024) .................... 24

*Thomas v. Walmart Inc.*,
2024 WL 1050179 (N.D. Ill. Mar. 11, 2024) .................... 24

*Ultimate Outdoor Movies, LLC v. FunFlicks, LLC*,
2019 WL 2233535 (D. Md. May 23, 2019) .................... 17

*United States v. All Funds on Deposit*,
783 F.3d 607 (7th Cir. 2015) .................... 15

*United States v. Szymuszkiewicz*,
622 F.3d 701 (7th Cir. 2010) .................... 5

*Va. State Bd. of Pharm. v. Va. Citizens Cons. Council, Inc.*,
425 U.S. 748 (1976) ........ 11

*Valenzuela v. Nationwide Mut. Ins. Co.*,
2023 WL 5266033 (C.D. Cal. Aug. 14, 2023) ........ 22

Vo*nbergen v. Liberty Mut. Ins. Co.*,
2023 WL 8569004 (E.D. Pa. Dec. 11, 2023) ........ 17

*Wash. Mut. Sav. Bank v. Hedreen*,
125 Wash. 2d 521 (*en banc*) ........ 27

*Wittmeyer v. Heartland Alliance for Human Needs & Rights*,
2024 WL 182211 (N.D. Ill. Jan. 17, 2024) ........ 33

*Zak v. Bose Corp.*,
2020 WL 2762552 (N.D. Ill. May 27, 2020) ........ 15

**Statutes**

18 Pa. Cons. Stat. § 5702 ........ 21

18 Pa. Cons. Stat. § 5703 ........ 32

18 Pa. Cons. Stat. § 5704 ........ 32

18 U.S.C. § 2510 ........ 23

18 U.S.C. § 2511 ........ 9

42 U.S.C. § 1320d-6 ........ 10

720 ILCS 5/14-1 ........ 27

720 ILCS 5/14-2 ........ 26, 28

815 ILCS 530/5 ........ 39

815 ILCS 530/20 ........ 38

815 ILCS 530/45 ........ 39

Cal. Bus. & Prof. Code § 17200 ........ 42

Cal. Civ. Code § 56.101 ........ 44

Cal. Civ. Code § 56.10 ........ 44

Cal. Penal Code § 632 ........ 15

Fla. Stat. § 934.01 ........ 29

Fla. Stat. § 934.02 ........ 21, 31, 32

Fla. Stat. § 934.425 ........ 31

Mass.Ann.Laws ch. 272, § 99 ........ 33

**Rules**

Fed. R. Civ. P. 8 ........ 7, 37

Fed. R. Civ. P. 9 ........ 37

## PRELIMINARY STATEMENT

Aspen Dental Management, Inc. ("Aspen" or "Defendant") uses tracking tools—including the Meta Pixel—to collect personally identifiable information ("PII") and protected health information ("PHI," and with PII, "Private Information") of the users of its website ("Users") and to divulge that information to third parties Meta, Google and other digital media platforms without consent. Aspen's use of tracking technologies, as extensively detailed in the First Amended Class Action Complaint, is expressly proscribed.[1] The prohibition against disclosure of PHI without consent is ***not*** new. Rather, the Office for Civil Rights guidance is clear that regulated entities are not permitted to use tracking technologies in a manner that results in disclosure of Private Information in violation of the Health Insurance Portability and Accountability Act ("HIPAA"). *See* ¶¶ 37-38.[2] The FTC is also unequivocal in its stance that healthcare companies may not use tracking technologies to collect and disclose PHI without informed consent. *See* ¶ 75.

Now, to avoid judicial scrutiny, Aspen attempts to frame this case as nothing more than an innocent party using commonplace digital tools for marketing. *See* MTD at 2. But Aspen is not an innocent party; rather, it made the conscious decision to partner with Facebook (and other third-party advertising and social media platforms) and agreed to Facebook's terms, which informed Aspen that it should not configure pixels on its website, www.aspendental.com (the "Website"), in a way that would disclose Private Information without consent. *See, e.g.*, ¶¶ 23 & 175. Thereafter, once the various tracking technologies were installed and configured *by Aspen* on its

[1] All paragraph citations are to Plaintiffs' First Amended Complaint, Dkt No. 21 (the "FAC").

[2] On March 18, 2024, OCR updated its guidance to make it clear—yet again—to regulated entities that they "are not permitted to use tracking technologies in a manner that would result in impermissible disclosures of PHI to tracking technology vendors or any other violations of the HIPAA Rules." *See* https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html (last visited May 20, 2024).

Website to delineate the precise types of information that it wanted to acquire, Aspen availed itself of the marketing and analytics insights, benefits and opportunities provided by the surreptitious tracking of its Users. *See, e.g.*, ¶¶ 30-31, 91-93 & 159-69; *see also Doe v. Regents of Univ. of California*, 672 F. Supp. 3d 813, 820 (N.D. Cal. 2023) ("Personal medical information is understood to be among the most sensitive information that could be collected about a person[.]").[3]

As detailed in the FAC, Aspen unlawfully collected a considerable amount of Private Information by tracking Users on its Website without consent. *See, e.g.*, ¶¶ 10, 94, 163 & 303. Through its configuration of various tracking technologies, Aspen collected and disclosed to Facebook and other third parties, private, sensitive and valuable information including (i) when Users viewed Aspen's locations and services, (ii) the specific services and/or treatments sought by each User, (iii) Users' locations, (iv) when Users scheduled appointments and (v) Users' PII including names, email addresses, phone numbers and other unique personal identifiers which are PHI. *See* ¶¶ 96, 152 & 254-63. The sensitive Private Information in these "data packets" is then linked to Users' unique Facebook ID and their specific internet protocol addresses, which are themselves protected information under HIPAA. *See id.*, ¶ 29 & n.18.

Despite being informed numerous times by OCR, the FTC and undersigned counsel (over a year ago), Aspen contends that its actions and alleged violations of HIPAA are not punishable under federal or Illinois law. But Plaintiffs do not assert a claim under HIPAA; rather, it is Aspen's flagrant violations of HIPAA in disclosing Users' PHI to third parties that establishes its criminal and tortious behavior for the claims that Plaintiffs assert. *See, e.g.*, *Hartley v. Univ. of Chicago*

[3] Aspen continues to use tracking technologies on its Website despite being informed by undersigned counsel as early as April 2023 that it had configured their tracking technologies in a way that was unlawfully disclosing Private Information to third-party platforms. Aspen's use of tracking technologies to divulge User information to third parties was knowing and intentional.

*Med. Ctr.*, 2024 WL 1886909, at *2 (N.D. Ill. Apr. 30, 2024) ("*Hartley II*") (denying motion to dismiss Electronic Communication Privacy Act ("ECPA") claim where the amended complaint contained allegations constituting violations of HIPAA).

Notwithstanding the plethora of decisions denying nearly identical requests, Aspen requests dismissal of Plaintiffs' claims under the ECPA and California Invasion of Privacy Act ("CIPA") arguing that the one-party exception forecloses liability. Several courts—including in this district—have denied similar motions where, as here, the plaintiffs detailed how the defendant had an independent purpose to violate HIPAA and federal or state laws. Judge Leinenweber recently evaluated similar allegations and denied a motion to dismiss the ECPA claim in light of allegations that "constitute violations of HIPAA." *Hartley II*, 2024 WL 1886909, at *2. Plaintiffs' remaining state and common law claims are likewise legally viable and plausibly alleged. Unable to distinguish the numerous decisions throughout the country that have sustained similar pixel-tracking complaints, Aspen merely ignores them.[4] Finally, Aspen's motion should be denied as premature as it asks this Court to make factual determinations that are inappropriate on a motion to dismiss. The motion to dismiss should be denied in its entirety.[5]

[4] *See, e.g.*, *Kurowski v. Rush Sys. for Health*, 2023 WL 8544084, at *4 (N.D. Ill. Dec. 11, 2023) (*"Rush III"*) (granting motion for leave to amend ECPA claim); *McCulley v. Banner Health*, No. 2:23-cv-00985-SPL, Dkt. No. 35 (D. Ariz. May 10, 2024) (attached as Exhibit A) (denying motion to dismiss ECPA, CIPA, unjust enrichment & additional claims); *R.C. v. Walgreen Co.*, 2024 WL 2263395 (C.D. Cal. May 9, 2024) (denying motion to dismiss ECPA, CIPA & unjust enrichment claims); *Mekhail v. N. Mem'l Health Care*, 2024 WL 1332260, at *4-13 (D. Minn. Mar. 28, 2024) (similar); *Kane v. Univ. of Rochester*, 2024 WL 1178340, at *8-12, 15-18 (W.D.N.Y. Mar. 19, 2024) (similar); *E.H. v. Meta Platforms, Inc.*, 2024 WL 557728, at *2-10 (N.D. Cal. Feb. 12, 2024) (denying motion to dismiss in its entirety).

[5] Plaintiffs withdraw their claims for invasion of privacy (Count III), breach of implied contract (Count V) and violation of the Massachusetts Consumer Protection Act (Count IX).

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) governs federal pleading standards and requires only that a complaint set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of a Rule 12(b)(6) motion is to evaluate the legal sufficiency of a complaint, not to decide the merits of the case. *See, e.g.*, *Derfus v. City of Chicago*, 42 F. Supp. 3d 888, 893 (7th Cir. 2014). The Court accepts "as true all of the well-pleaded facts in the complaint and draw[s] all reasonable inferences in favor of the plaintiff." *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017) (quotation omitted). Courts must deny a motion to dismiss if the complaint "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 555-56 (2007) (stating that a complaint satisfies this standard when its factual allegations "raise a right to relief above the speculative level.").

## ARGUMENT

### I. PLAINTIFFS' FEDERAL WIRETAP ACT CLAIM IS NOT FORECLOSED BECAUSE THE CRIME-TORT EXCEPTION APPLIES.

Plaintiffs allege that Aspen violated the ECPA, which forbids (i) *interception* of electronic communications, (ii) *disclosure* of electronic communications and (iii) *using* the contents of those electronic communications. *See* ¶¶ 409-38. Aspen claims that it did not intercept the content of Plaintiffs' communications and that its conduct falls within the party exception. But in making these arguments, Aspen ignores and contradicts Plaintiffs' well-pleaded allegations and improperly attempts to raise factual issues not appropriate for resolution at this stage of litigation.

#### A. Plaintiffs Allege that Defendant Intercepted the Contents of their Communications.

In a single sentence with a string cite of cases holding merely that interception is an element of the ECPA, Aspen proclaims that "to violate the statute through an alleged unlawful disclosure, as Plaintiffs claim here, there first must have been an unlawful interception of some

communication." MTD at 4. Plaintiffs repeatedly allege that Aspen intentionally installed and configured tracking tools on its Website to intercept Users' communications and identities not for treatment purposes but to disclose the content of those communications to third parties, such as Meta. *See, e.g.*, ¶¶ 8, 20, 28, 137, 268, 420 & 456. The Meta Pixel, for instance, accomplishes the interception by contemporaneously redirecting User communications to Facebook every time someone takes an action on Defendant's Website. *See, e.g.*, ¶¶ 114, 141 & 153. Courts routinely hold that the use of source code to simultaneously redirect communications to a third party is an "interception." *See, e.g.*, *United States v. Szymuszkiewicz*, 622 F.3d 701, 703–04, 706 (7th Cir. 2010) (affirming that "the duplication and forwarding" of emails to a third party is an "interception" under the ECPA); *Group Health*, 2023 WL 8850243, at *6 (finding plaintiffs alleged an interception because the Pixel "contemporaneously and intentionally redirected and disclosed the contents of Plaintiffs' electronic communications to third parties") (cleaned up). Accordingly, Plaintiffs have adequately plead the "interception" element of their ECPA claim.

**B. The One-Party Exception Does Not Apply.**

The crux of Aspen's argument is that there can be no ECPA or CIPA liability because it was a party to the communications at issue. *See* MTD at 5. But where the crime-tort exception applies, that exception overrides the one-party consent rule:

> It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication … ***unless such communication is intercepted for the purpose of committing any criminal or tortious act*** in violation of the Constitution or laws of the United States or of any State.

18 U.S.C. § 2511(2)(d) (emphasis added). Criminal or tortious purposes may include "invading [a plaintiff's] privacy, defrauding her, or committing unfair business practices." *Deteresa v. Am. Broadcasting Cos., Inc.*, 121 F.3d 460, 467, n.4 (9th Cir. 1997) (cleaned up). Courts in the Seventh

Circuit focus on whether the purpose for the interception—its intended use—was criminal or tortious. *See, e.g.*, *Desnick v. Am. Broad. Cos., Inc.*, 44 F.3d 1345, 1353 (7th Cir. 1995). Aspen attempts to sidestep Plaintiffs' detailed allegations by arguing that they do not support the Court's application of the crime-tort exception. *See* MTD at 5-8. But for the reasons below, the crime-tort exception applies and, at a minimum, it is a fact question beyond the purview of this motion.

First, Plaintiffs allege that Aspen intercepted their electronic communications to violate HIPAA by collecting and disclosing their PHI and/or individually identifiable health information ("IIHI") without consent thereby tortiously and criminally invading their privacy. *See, e.g.*, ¶¶ 427-28.[6] Judge Leinenweber recently held that the crime-tort exception applied because "Defendant could be responsible for acquiring Plaintiff's IIHI with the purpose of disclosing it to Meta for their mutual financial benefits." *Hartley II*, 2024 WL 1886909, at *2. There, the court relied on the fact that plaintiff included "over ninety (90) new paragraphs which she alleges constitute violations of HIPAA." *Id*. Judge Kennelly similarly concluded that allegations that a healthcare defendant knowingly transmits information that constitutes IIHI for the purpose of financial gain are sufficient to invoke the HIPAA exception-to-the-party-exception. *Rush III*, 2023 WL 8544084, at *2-3; *see also Kane*, 2024 WL 1178340, at *7 (denying motion to dismiss ECPA claim because defendant violated HIPAA by disclosing "information relating to the provision of health care that could reasonably identify that user"); *Mekhail*, 2024 WL 1332260, at *5 (same).

As in *Hartley II* and *Rush III*, Plaintiffs have alleged (i) when they began using Aspen's Website; (ii) the specific health conditions, treatments sought, medical history and personal information they shared with Defendant (iii) and the actions they took on the Website including

[6] Information is IIHI if it (i) is "created or received by" a health care provider and (ii) either "identifies the individual" or provides a reasonable basis to identify the individual. *See* ¶ 427 (citing 42 U.S.C. § 1320d-6(A)-(B)).

researching their medical concerns and treatments, scheduling appointments and performing other tasks related to their medical inquiries and treatment. *See* ¶¶ 300-82. And Plaintiffs sufficiently allege that their Private Information was received by Aspen and identifies or provides a reasonable basis to identify them. *Id*. Defendant does not dispute that either element of IIHI is met here. Thus, Defendant's independent violations of HIPAA are sufficient to invoke the crime-tort exception.

Second, Plaintiffs allege that Aspen's acquisition of User communications that were disclosed to Meta and other third parties without consent was done for the purpose of committing criminal and tortious acts in violation of the laws of the United States and the states where Plaintiffs reside (Illinois, Florida, Massachusetts, California and Pennsylvania). *See* ¶¶ 426-27, 489-558 & 574-640. Plaintiffs' allegations concerning Aspen's scheme or artifice to defraud are also sufficient to invoke the crime-tort exception as they describe the process it used including, but not limited to, (i) its false and misleading statements and omissions in its privacy policy; (ii) the placement of the fbp cookie on User devices distinguished as a first-party cookie on Defendant's Website (instead of a third-party cookie run by Meta) and (iii) how Defendant willfully invaded and took Plaintiffs' property by sharing Plaintiffs' data without written authorization with knowledge that Defendant did not have the right to do so. *See* ¶¶ 434-36. Plaintiffs also allege that Aspen committed the independent tort of negligence. *See, infra,* § IV.A; *see also* ¶¶ 439-48.[7]

Finally, whether Aspen had criminal or tortious intent is a factual question for discovery to be decided on a full evidentiary record. *See, e.g.*, *Rush III*, 2023 WL 8544084, at *3 (observing that plaintiff "lacks the direct access to what occurs in the background on Rush's web properties"); *Group Health*, 2023 WL 8850243, at *7–8 ("[D]etermination of [defendant]'s actual purpose for

[7] Torts are sufficient to invoke the crime-tort exception. In *Walgreen Co.*, the court found that because plaintiffs stated a claim for invasion of privacy, they had alleged the requisite intent for the crime-tort exception to apply to their ECPA/CIPA claims. *See* 2024 WL 2263395, at *14-16.

. . . using the Pixel Code requires a factual undertaking."); *Doe v. Meta Platforms, Inc*., 2023 WL 5837443, at *3 (N.D. Cal. Sept. 7, 2023) (explaining that questions existed regarding "what steps [defendant] actually took to prevent receipt of health information, the efficacy of its filtering tools, and the technological feasibility of implementing other measures to prevent the transfer of health information, all turn on disputed questions of fact that need development on a full evidentiary record"). Precisely because Plaintiffs "may be able to show" that the crime-tort exception applies at a later, fact-intensive stage, it is inappropriate to dismiss a suit at the pleading stage based on the single-party consent defense. *See also Doe v. Smith*, 429 F.3d 706, 709 (7th Cir. 2005).

### C. Aspen's Cited Authority Fails to Persuade When Compared to Recent Decisions.

The cases that Aspen relies on are readily distinguishable. MTD at 5-8. Beginning with *In re DoubleClick*, the case did not involve PHI but rather challenged an internet advertiser who, after an FTC investigation, was found to have "never used or disclosed consumers' PII for purposes other than those disclosed in its privacy policy" and created profiles for users that contained "only non-PHI." *See* 154 F. Supp. 2d 497, 500, 506 (S.D.N.Y. 2001). In stark contrast, Aspen is a healthcare provider the encourages Users to use its Website for healthcare and surreptitiously collects and discloses their PHI to Meta and other third parties. *See, e.g.*, ¶¶ 7, 28, 96, 145 & 152.

*In re DoubleClick* also lists torts that can support the crime-tort exception including intercepting a communication for the purpose of violating Cal. Penal Code § 632, invading plaintiff's privacy or committing unfair business practices. *See* 154 F.Supp.2d at 516. Plaintiffs allege Aspen intercepted their communications for the purpose of committing exactly these and similar types of torts. Supporting Plaintiffs' position is the fact that they plead that Defendant collects and discloses PHI it knows is protected—disclosures deemed "impermissible" by the FTC and OCR—whereas those in *In re DoubleClick* did not include PHI and were clearly disclosed in their privacy policy. *Compare* 154 F. Supp. 2d at 506-07 & 514-15, *with* ¶¶ 37, 74-82 216-17 &

245-46. Aspen's privacy policy, however, assured Users it would use and disclose their health information only under certain circumstances, none of which apply here. *See* ¶ 9.[8] Aspen further represented that unless a User provides "written authorization, [it] cannot use or disclose your health information for any reason except those described in this notice." *Id.*

Defendant's reliance on *Desnick* is misplaced as there was no dispute that defendant's intended purpose in recording plaintiffs was "to see whether the Center's physicians would recommend cataract surgery on the testers." 44 F.3d 1345, 1353 (7th Cir. 1995). "By the plaintiffs' own account" defendant's uncontested purpose was investigative reporting, a non-tortious purpose. *Id*. That is, plaintiffs' ECPA claim did not rely on a tortious purpose ***at the time*** of the recording which is required for the exception to apply. *Id*. Plaintiffs in *Desnick* then tried to work backwards by claiming that because defendants decided to use the recording for an alleged defamation after the recording was made, the crime-tort exception applied. The court rejected the argument because the pleadings failed to allege a tortious intent *at the time* of the recording. *Id*.

The facts in this case bear no resemblance to those in *Desnick*. Here, there is no permissible explanation for Aspen's conduct—let alone an undisputed permissible purpose. Instead, Plaintiffs allege that Aspen intentionally installed the Meta Pixel and other tracking technologies ***with the primary motivation*** of intercepting and disclosing its Users' Private Information to third parties without consent. *See, e.g.*, ¶¶ 17, 24 & 426. Once the tracking technologies were installed—which were not necessary to operate Aspen's Website—and began intercepting patient communications, Aspen had already established the requisite criminal purpose of sharing the intercepted Private

[8] After receipt of undersigned counsel's demand letter in April of 2023, Aspen changed its privacy policy on or about June 30, 2023 to disclose that it does collect protected personal information. But the updated policy says that it "does not apply to the protected health information that you may provide to Company in connection with Company's provision of dental or healthcare services." *See* https://www.aspendental.com/legal/privacy-policy/.

Information with Meta. To be clear, it is not now—nor has it ever been—legal for a health care provider (like Aspen) to sell or share patient data for marketing purposes without consent. *See, e.g.*, ¶¶ 31, 37-39 & 75. And Aspen's own privacy policy does not permit such conduct. *See* ¶ 9.

Concerning Defendant's analysis of *Katz-Lacabe v. Oracle America, Inc.*, the court held that plaintiffs' attempt to invoke the crime-tort exception based on internal statements was insufficient to allege defendant's "underlying motivation in collecting and selling data about internet users was anything other than to generate revenue." 2024 WL 1471299, at *3 (N.D. Cal. Apr. 3, 2024). However, this case is distinguishable from *Katz-Lacabe* for two reasons.

First, district courts in the Seventh Circuit and nationwide have held that the crime-tort exception may apply where defendant commits an act that is punishable as a crime under HIPAA or a tort such as invasion of privacy. *See, e.g.*, *Hartley II*, 2024 WL 1886909, at *2; *Walgreen Co.*, 2024 WL 2263395, at *14-16. The fact that Aspen may have had a financial purpose or received a financial benefit does not mean that it could not and did not simultaneously have a criminal purpose. *Compare* MTD at 6-7, *with In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 796 (N.D. Cal. 2022) ("The existence of a lawful purpose does not sanitize an interception that was also made for an illegitimate purpose."). For example, in *Hartley II*, the court held that "it is plausible that Defendant could be responsible for acquiring Plaintiff's IIHI with the purpose of disclosing it to Meta ***for their mutual financial benefits.***" 2024 WL 1886909, at *2 (emphasis added). And in *Rush III*, Judge Kennelly found the proposed amended complaint sufficient because it alleged that defendant transmitted data for financial gain and violated the provision of HIPAA that imposes a criminal penalty for knowingly disclosing IIHI to a third party—the same portion of HIPAA alleged here. *See* 2023 WL 8544084, at *2-3.

Second, Plaintiffs' allegations here are markedly different than those in *Katz-Lacabe*. There, plaintiffs focused on internal statements and privacy practices to support the application of the crime-tort exception. *See* 2024 WL 1471299, at *2. In stark contrast, Plaintiffs' allegations here explain how Aspen's purpose was to unlawfully disclose the contents of their communications to Meta and other third parties without their consent, which was a criminal violation of HIPAA and amounted to tortious conduct including negligence. *See, e.g.*, ¶¶ 222-33, 427-28 & 439-48.

In a last-ditch effort, Aspen, a private entity, brazenly claims that the conduct challenged by Plaintiffs' FAC—embedding tracking technologies on its Website to collect and disclose valuable and sensitive PHI—is conduct protected by the First Amendment. *See* MTD at 7. Defendant's theory runs counter to the basic principle that the First Amendment prohibits abridgment of speech by ***government actors***. *See, e.g.*, *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 805 (2019); *Goodman v. Illinois Dep't of Fin. & Pro. Regul.*, 430 F.3d 432, 438 (7th Cir. 2005). This principle should have been apparent to Aspen as the cases it relies on concern a state actor. *See, e.g.*, *Bigelow v. Virginia*, 421 U.S. 809, 819 (1975); *Va. State Bd. of Pharm. v. Va. Citizens Cons. Council, Inc.*, 425 U.S. 748, 773 (1976). No comparable situation exists here—the state is not prohibiting Aspen from speaking. Defendant's arguments ignore Plaintiffs' allegations and ask this Court to ignore Judge Leinenweber's and Judge Kennelly's well-reasoned decisions—an approach this Court should reject given the factual similarity between the cases.

## II. PLAINTIFFS ALLEGE VIOLATIONS OF STATE WIRETAP ACTS.

### A. Defendant Intercepted "Contents" under all State Wiretap Acts.

Aspen argues that Plaintiffs do not plausibly allege that the "contents" of their communications were intercepted under the Florida Security of Communications Act ("FSCA"), Pennsylvania's Wiretapping and Electronic Surveillance Control Act ("WESCA") and CIPA. *See* MTD at 10-12, 16 & 23. Standing next to courts interpreting these statutes and the facts detailed

in the FAC, Aspen's argument is unavailing. These states define "contents" as "any information concerning the substance, purport, or meaning of that communication." Fla. Stat. § 934.02(7); *see also* 18 Pa. Cons. Stat. § 5702 ("any information concerning the substance, purport, or meaning of that communication."). Moreover, these "courts follow federal courts as to the meaning of analogous provisions, including what constitutes "contents" of a communication." MTD at 10; *Cousin II*, 2023 WL 8007350, at *5 (With respect to the definition of "content," "[t]he analysis for a violation of CIPA is the same as that under the federal Wiretap Act.").

Aspen—intentionally or not—fails to appreciate the distinction between "contents" and "record information" with contents being the "substance, purport, or meaning . . . of the communication itself" as opposed to "record information Defendant could have obtained through a security camera at a brick-and-mortar store." *Goldstein v. Costco Wholesale Corp.*, 559 F.Supp.3d 1318, 1321 (S.D. Fla. 2021). A URL that discloses a "search term or similar communication made by the user" can be a communication under the statute. *See Doe v. Meta Platforms, Inc.*, 2023 WL 5837443, at *3 (N.D. Cal. Sept. 7, 2023) (quoting 18 U.S.C. § 2510(8)). Plaintiffs have alleged the interception of the contents of their communications. *See, supra*, § I.A.

Aspen cites *In Facebook Internet Tracking Litigation* and *In re Zynga Privacy Litigation* for the proposition that a Facebook ID and referrer header that a user visits are not "contents." MTD at 10-12. Aspen relies upon a series of cases that examined a different technology known as "session replay" and concluded that none of the information transmitted constituted "contents" for purposes of the FSCA. *Id.* (citations omitted).[9] But the court in *In re Zynga* recognized that certain

[9] Aspen's argument here is identical to the arguments made in *Cyr v. Orlando Health, Inc.*, where the court denied a nearly identical motion to dismiss. *See* 8:23-cv-00588, ECF Nos. 37 & 42 (M.D. Fla.) (attached as Exhibit B). While Aspen attempts to dispute the distinction between session replay software and the Pixel used here, session replay is different.

types of intercepted information constitute "contents," observing: "[u]nder some circumstances, a user's request to a search engine for specific information could constitute a communication such that divulging a URL containing that search term to a third party could amount to disclosure of the contents of a communication." 750 F.3d at 1108–09. The facts of *In re Facebook Internet Tracking* and *Zynga* simply did not involve such descriptive URLs. *See, e.g.*, *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 795–96 ("In my view, the log-in buttons and the kinds of descriptive URLs identified in the Smith Decl. are 'contents' within the meaning of the statute. Unlike in *Zynga*, the URLs at issue here would not merely reveal the name of a Facebook user or group—as Smith explained, the transmitted URLs include both the 'path' and the 'query string.'").

Applying the definition of "contents," Aspen intercepted substantive information during its Users' interactions with its Website. Plaintiffs allege that their search queries including those containing their requests for appointments and providers for their specific medical concerns, research regarding their medical conditions and symptoms and the titles of the webpages they visited were disclosed to third parties. *See, e.g.*, ¶¶ 28, 40, 140, 257 & 549. For example, Plaintiff C.A alleges that Aspen: (i) required Plaintiff to provide Private Information including their first and last name, birth date, email address, phone number and reason for visit; (ii) asked Plaintiff to respond to guided questions regarding the reason for their visit; (iii) procured Facebook to track and intercept Plaintiff C.A.'s internet communications while navigating the Website that Defendant owns and operates and (iv) intended Facebook and/or Google to learn the meaning of the content Plaintiff requested. ¶¶ 371-72 & 636-37. This information is substantive. *See, e.g.*, *Cousin II*, 2023 WL 8007350, at *5 (denying motion to dismiss CIPA claim because "Plaintiffs allege that their data included personal search queries—such as specialty healthcare providers and treatments for medical conditions—and therefore plausibly conveyed content: their PHI"); *Katz-*

*Lacabe,* 2023 WL 6466195, at *5 ("[T]o the extent Plaintiffs' CIPA claim avers referrer URLs and data entered into forms are 'content,' Plaintiffs have met their burden").

Moreover, a review of the URLs Plaintiffs accessed makes it clear that the URLs include the fact that Plaintiffs scheduled an appointment and medical terms—in other words, substantive content of the communication. *See* ¶ 130 (cookies on Aspen's Website with URL identified); ¶¶ 145-47. The fact that Plaintiffs alleged the specific search queries they submitted on Aspen's Website and included URLs with content constitutes contents of communications because it consists of substantive medical treatment and PII. *See In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218, at *11 (rejecting argument that "the names of buttons clicked on websites and their associated URLs are not 'content' within the meaning of the [wiretapping] statute").

**B. Plaintiffs State a Viable Claim under the Illinois Eavesdropping Act.**

The Illinois Eavesdropping Act provides for civil liability against an eavesdropper when "he or she [u]ses or discloses any information which he or she knows or reasonably should know was obtained from a private conversation or private electronic communication in violation of this Article, unless he or she does so with ***the consent of all of the parties***." 720 ILCS 5/14-2(a)(5) (emphasis added); *see also* 720 ILCS 5/14-2(a)(2) (A person commits eavesdropping "when he or she knowingly and intentionally . . . [u]ses an eavesdropping device, in a surreptitious manner, for the purpose of transmitting or recording all or any part of any private conversation to which he or she is a party ***unless he or she does so with the consent of all other parties*** to the private conversation.") (emphasis added).[10] In order to evade judicial review, Aspen puts forward two—equally unavailing—arguments.

[10] The Illinois Eavesdropping Act also provides a civil cause of action against an eavesdropper or "his principal" for the interception, recording, or transcription, "in a surreptitious manner, [of] any private electronic communication" by a non-party without "the consent of all parties to the private electronic communication." 720 Ill. Stat. §§ 5/14-2(a)(3).

First, Defendant argues that a "private conversation" in 720 ILCS 5/14-2(a)(2) is limited to oral communications and thus the provision cannot apply. MTD at 9. A "private conversation" is "any oral communication between 2 or more persons, ***whether in person or transmitted between the parties by wire or other means***, when one or more of the parties intended the communication to be of a private nature under circumstances reasonably justifying that expectation." 720 ILCS 5/14-1(d) (emphasis added). Defendant relies on *Angelo v. Moriarty*, where the court analyzed the pre-1994 version of the Act. *See* 2016 WL 640525, at *4 (N.D. Ill. Feb. 18, 2016). The current version of the Act has been in effect since 2014 when "private conversation" was amended to include communications "transmitted between the parties by wire or other means." 720 ILCS 5/14-1(d). The current definition is broader and the meaning of "private conversation" is not restricted to oral conversations. *See United States v. All Funds on Deposit*, 783 F.3d 607, 622 (7th Cir. 2015) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says") (cleaned up). Here, Plaintiffs allege that their private conversations including booking appointments—the communication by wire—were recorded and transmitted to third parties by Defendant. *See, e.g.*, ¶¶ 7, 28 & 257.

Second, Defendant argues that only one-party consent is required under 720 ILCS 5/14-2(a)(5). MTD at 9. This is not so as the plain text of the statute is clear that an eavesdropper may not use or disclose information without "the consent of all of the parties." 720 ILCS 5/14-2(a)(5) (emphasis added); *see also In re Thorpe*, 881 F.3d 536, 539 (7th Cir. 2018) ("Our analysis rests on the plain statutory text.").[11] Here, Plaintiffs did not consent to their Private Information being

[11] "Under current Illinois law, a party to a private conversation must have consent of all other parties before recording the conversation. . . [if] one or more parties is reasonably justified in expecting the conversation to be private." *Cannon*, 2023 WL 2349344, at *5 (internal citation & quotation omitted); *but see Zak v. Bose Corp.*, 2020 WL 2762552, at *2 (N.D. Ill. May 27, 2020) (conflating the requirements for the ECPA and the Illinois Eavesdropping Act).

disclosed to third parties. *See, e.g.*, ¶¶ 23 & 43-45. And Plaintiffs had a reasonable expectation that their private communications with Aspen and appointment bookings concerning their medical conditions and treatment would remain confidential. *See, e.g.*, ¶¶ 249-53; *Henyard v. MV Transp.*, 2019 WL 1399953, at *8 (N.D. Ill. Mar. 28, 2019) (denying motion to dismiss where plaintiff had a reasonable expectation of privacy). Indeed, Defendant's privacy policy proclaims that it does not use or disclose Private Information without written permission—consent that Defendant did not have. *See* ¶ 9; *see also Kurowski v. Rush Sys. for Health*, 2023 WL 4707184, at *13 (N.D. Ill. July 24, 2023) (permitting claim under Illinois Eavesdropping Act to proceed past motion to dismiss).

### C. Plaintiffs Allege Violations of the Florida Security of Communications Act.

Plaintiffs have alleged (i) the interception of the contents of a communication, (ii) that a device was used to intercept any communication or (iii) that any electronic communications were intercepted. *See* Fla. Stat. § 934.01, *et seq.* Thus, Plaintiffs have alleged a claim under the FSCA.

First, Aspen contends that the FSCA is not applicable because the use of the Pixel to intercept internet communications is not embraced by the statute. Aspen relies on *Jacome v. Spirit Airlines, Inc.* for the proposition that "software, email servers, and drives do not constitute devices under the wiretapping statutes." 2021 WL 3087860, at *5 (Fla. Cir. Ct. June 17, 2021). But the "Eleventh Circuit has determined that software can constitute a 'device' in the wiretapping context." *Makkinje v. Extra Space Storage, Inc.*, 2022 WL 80437, at *2 (M.D. Fla. Jan. 7, 2022) (citation omitted). If the software at issue can contemporaneously capture information and transmit it beyond the user's computer, it falls within the scope of a wiretapping device. *See id.*[12]

[12] Not a single court has concluded that pixel technology is not a "device," and numerous courts have held that software, such as session replay, constitutes a "device." *See, e.g.*, *James v. Walt Disney Co.*, 2023 WL 7392285, at *13–14 (N.D. Cal. Nov. 8, 2023), (criticizing *Jacome* and stating "this Court has indicated that software can be a 'device' for purposes of the federal Wiretap Act."); *Makkinje v. Extra Space Storage, Inc.*, 2022 WL 80437, at *2 (M.D. Fla. Jan. 7, 2022)

Plaintiffs' FAC explains how the Pixel and other tracking technologies capture information communicated by Users and instantly transmit that information beyond the Users' computers to Meta and other third parties. *See, e.g.*, ¶¶ 11, 17, 92-94, 116 & 132. The Pixel does not just recreate where a user navigates but affirmatively and instantly transmits what is essentially a conversation with Defendant through the Website; the only difference is that the conversation is electronic and not over the phone. *Id*. Thus, Aspen's use of the Pixel constitutes the use of a "device" to intercept electronic communications as required under the FSCA.[13]

Second, Aspen asserts that the FSCA exclusion under "electronic communications" for "[a]ny communication from an electronic or mechanical device which permits the tracking of the movement of a person or an object" means that Plaintiffs cannot allege that any "electronic communications" were intercepted. MTD at 14-15 (citing Fla. Stat. § 934.02(12)(c)). A tracking device in that context is something that tracks the movement of a person or object, which presumably is the subject of other regulation. *See* Fla. Stat. § 934.425(2) & (5).

The technology at issue here is distinct from the cases that Defendant relies on based on session replay software that tracks a website user's actual movement and navigation through the website. *See Jacome*, 2021 WL 3087860, at *3-5; *Goldstein v. Costco Wholesale Corp.*, 559 F.

---

(holding that whether session replay software constitutes a "device" was "more appropriately addressed at the summary judgment stage"); V*onbergen v. Liberty Mut. Ins. Co*., 2023 WL 8569004, at *10 (E.D. Pa. Dec. 11, 2023) ("[T]he Court finds that Ms. Vonbergen has sufficiently alleged that session replay software is a 'device' under the Pennsylvania Wiretap Act").

[13] The cases Aspen relies on hold only that an email server to which an email was sent is not a "device" that "intercepted" the email because the sender intends for that server to receive it. *See Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*, 2007 WL 4394447, at *4 (E.D. Pa. Dec. 13, 2007) ("The drive or server on which an e-mail is received does not constitute a device for purposes of the Wiretap Act."); *Ultimate Outdoor Movies, LLC v. FunFlicks, LLC*, 2019 WL 2233535, at *21 (D. Md. May 23, 2019) (similar); *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1269 (N.D. Cal. 2001) (similar). Plaintiffs never intended Aspen's pixels to intercept their PHI and reroute it to third parties. Thus, the logic underlying those decisions cannot apply here.

Supp. 3d 1318, 1321 (S.D. Fla. 2021). *Jacome* and *Goldstein* did *not* involve the use of the Pixel to allow Facebook to intercept patients' substantive communications on websites for medical entities covered under HIPAA. Both courts found that the type of information tracked while plaintiffs browsed commercial websites had no contents because they did not convey the substance of any particular communication. *See id.* In contrast, this is not what a pixel does. The Pixel and other tracking technologies "commandeer," "bug" or "tap" patients' computing devices, allowing Meta and other third parties to listen in on the contents of highly sensitive communications with Defendant and thereby intercept those communications, not merely meta-data or time stamps. *See, e.g.*, ¶¶ 20, 114, 142, 167. The technologies at issue in this case are designed to allow Meta to intercept Plaintiffs' communications with Aspen's Website including, but not limited to, searches for doctors or specific medical conditions and booking appointments. *See, e.g.*, ¶¶ 7, 28 & 145-48. And "transmissions containing data entered by the user into forms on various websites and referrer URLs constitute electronic communications under the FSCA." *Katz-Lacabe*, 2023 WL 6466195, at *5 (cleaned up). Aspen's use of the Pixel to capture PHI does not fall under the exclusion provision of § 934.02(12)(c) for electronic devices which only track "the movement of a person."

**D. Plaintiffs Plausibly Allege a Claim under the Pennsylvania Wiretap Act.**

Because Plaintiffs have alleged (i) interception of the "contents" of an "electronic communication;" (ii) that a "device" was used to intercept the communications; (iii) that the interceptive conduct occurred in Pennsylvania and (iv) that an "electronic communication" was intercepted, *see* 18 Pa. Cons. Stat. §§ 5703, 5704, Defendant's motion should be denied. Aspen again contends that Plaintiffs' claim under the WESCA fails because the Pixel does not qualify as a "device" and Plaintiffs did not plausibly allege interception of "electronic communications." MTD at 16-17. For the same reasons the contention failed in the context of the FSCA, and because the WESCA defines "contents" the same way as the FSCA, it fails here. *See, supra*, § II.C.

Defendant's only remaining argument is that "Plaintiffs' WESCA claim also fails because they have not pled facts showing that any alleged interception took place in Pennsylvania." MTD at 18. That is false because Plaintiff C.A. has alleged that they are a resident of Pennsylvania and they used Aspen's Website in Pennsylvania. ¶¶ 64 & 638. Given that Plaintiffs allege that the Pixels are configured to intercept communications by essentially planting a bug on the Users' browsers, Plaintiff C.A. has alleged that the interception occurred in Pennsylvania.

### E. Plaintiffs Allege Violations of the Massachusetts Wiretap Act.

The Massachusetts Wiretap Act ("MWA") prohibits the interception, disclosure or use of wire communications and protects electronic transmission of messages consistent with the ECPA. *See* Mass.Ann.Laws ch. 272, § 99(Q); *see also Gilday v. Dubois*, 124 F.3d 277, 289 (1st Cir. 1997) ("A secretive interception occurs under the [MWA] unless both parties to a wire 'communication' had 'actual knowledge' of the 'interception[.]'). Aspen's arguments to avoid liability misapprehend Plaintiffs' allegations and do not support dismissal of the claim.

First, Aspen again argues that the Pixel does not constitute an "intercepting device." MTD at 19; *but see*, *supra*, §§ II.B(2) & II.C(2). Defendant cites no case law for its argument and multiple Massachusetts courts have rejected it. *See, e.g.*, *Doe v. The Children's Hosp. Corp.*, No. 2384CV00411-BLS1, at *6-7 (Suffolk Super. Ct.) (Mem. & Order, Dkt. No. 18, dated Sept. 15, 2023) (attached as Exhibit C) ("[T]o restrict software code from being considered an intercepting device as Boston Children's suggests would essentially nullify the statute's application"); *Doe v. Boston Med. Ctr. Corp.*, No. 2384CV00326-BLS1, at *7-8 (Suffolk Super. Ct.) (Mem. & Order, Dkt. No. 18, dated Sept. 15, 2023) (attached as Exhibit D) (same).

Defendant next argues Plaintiffs have not alleged that the interception of their Private Information took place within Massachusetts. MTD at 19-20. Plaintiffs S.B. and A.O. both allege that they are Massachusetts residents and used Aspen's Website in Massachusetts from their

devices. *See* ¶¶ 58 & 61. And Plaintiffs allege that the Pixel intercepts communications from within Users' devices and browsers. *See, e.g.*, ¶¶ 11, 88-90, 114, 118 & 130. This is sufficient. *See Boston Med. Ctr. Corp.*, Ex. D at 8 ("[B]ecause the sender and the intended recipient/interceptor are both in Massachusetts, the location of Meta and Google in California is not disqualifying, particularly in the absence of controlling authority holding otherwise").[14]

Additionally, Aspen asserts that any interceptions were not "secretly heard or recorded." MTD at 20-21. The relevant inquiry for determining whether an interception was secret is "whether individuals being recorded have actual or constructive knowledge of the recording, which may be proved where there are clear and unequivocal objective manifestations of knowledge in the speakers' statements or conduct." *Commonwealth v. Morris*, 212 N.E.3d 812, 827 (2023) (cleaned up). Here, Plaintiffs were not aware that their Private Information was intercepted and unlawfully disclosed to Facebook and other third parties because Defendant kept this information secret. *See* ¶ 383. Had Plaintiffs been aware of Defendant's disclosures, they would not have provided their Private Information voluntarily or would have demanded compensation. *See* ¶ 31. Defendant asserts that it disclosed that "it tracked users' browser activities on its public website using cookies and other technology." MTD at 21. This statement is plainly false because Aspen's privacy policy informs Users that it does not apply to PHI provided in connection with dental or healthcare services. *See, infra,* n.8. Accordingly, Plaintiffs allege that Aspen's interception and disclosure of their PHI occurred in secret. *See Children's Hosp. Corp.*, Ex. C at 8 ("The Privacy Notice here does not prove the existence of Plaintiff's actual or constructive knowledge [of Pixel interception

[14] Defendant's reliance on *Marquis v. Google, Inc.*, 2015 WL 13037257, at *3, *7 (Mass. Super. Ct. Feb. 13, 2015), is inapposite. There, the court relied on the fact that the alleged conduct occurred on physical servers outside Massachusetts. In contrast, here Plaintiffs allege that Aspen's unauthorized conduct occurred on their personal devices in Massachusetts. *See* ¶¶ 58, 61 & 581.

of private information because] the notice is not alleged to be a prominent disclaimer [and] even if Plaintiff had read it, it likely would not have alerted her to the interceptions alleged.")

Lastly, Defendant contends that because its activities were undertaken in the ordinary course of business, they are excluded from the definition of an unlawful "interception." MTD at 21-22. Unlike the cases it relies on where a recording was an "unavoidable byproduct or consequence," Aspen's use of the Pixel and other tracking technologies to send Plaintiffs' PHI to undisclosed third parties is not part of the ordinary course of business. *Compare Dillon v. Mass. Bay Transp. Auth.*, 729 N.E.2d 329, 336 (Mass. App. Ct. 2000) (defendant's business included an internal recording system); *O'Sullivan v. NYNEX Corp*, 687 N.E.2d 1241, 1246 (Mass. 1997) (defendant's business included telemarketing), *with* ¶ 39 (alleging "tracking codes are not required for Aspen's Site to operate"). Aspen's business enterprise is to provide dental healthcare services—not to use tracking technologies to send Plaintiffs targeted advertising. Thus, the ordinary course of business exception does not apply.

**F. Plaintiffs' California Invasion of Privacy Act Claim Should Not Be Dismissed.**

Aspen's argument that Plaintiff C.M.'s communications were not intercepted while "in transit" displays a misunderstanding of the technology and the law as well as makes assumptions contrary to Plaintiffs' allegations. *Compare* MTD at 23-24, *with* ¶¶ 105-107, 114-15, 138-156 & 199-203. Plaintiffs allege how Aspen "use[d] source code to commandeer the User's computing device, causing the device to contemporaneously and invisibly re-direct the Users' communications to third parties" and how Aspen "employed the Pixels and other tracking technologies, to intercept, duplicate, and re-direct Plaintiffs' and Class members' Private Information to Facebook, Google and the other Pixel data recipients." *See* ¶¶ 105-107, 114-15, 138-142 & 199-203. These allegations are more than enough to plead Plaintiff's communications

were intercepted in transit. *See, e.g.*, *D'Angelo v. Penney OPCO LLC,* 2023 WL 7006793, at *8 (S.D. Cal. Oct. 24, 2023) ("Plaintiffs do indeed allege with sufficient specificity the how and when of Vergic's interception of Plaintiffs' chat communications with JC Penney"); *Valenzuela v. Nationwide Mut. Ins. Co.*, 2023 WL 5266033, at *5 (same).

*Smith v. Facebook, Inc*. is inapposite because the court analyzed a complaint involving the use of older Facebook technology (the "Like" button placed on various websites). *See* 262 F. Supp. 3d 943, 954 (N.D. Cal. 2017). The complaint in *Smith* was also bereft of the technical detail in Plaintiffs' FAC and the analysis was limited to personal jurisdiction. Fundamentally, there, the plaintiffs "admit[ted] that they do not know whether the Healthcare Defendants were aware that Facebook used embedded buttons to track their visitors[,]" *id.* at 951, which is the opposite of the intentional conduct in which Aspen engaged. Furthermore, the Ninth Circuit, interpreting CIPA, has flatly rejected Aspen's suggestion that transmission to the undisclosed recipient of plaintiffs' communication must arrive before it is received by the intended (disclosed) recipient. *See, e.g.*, *Konop v. Hawaiian Air., Inc*. 302 F.3d 868, 877–78 (9th Cir. 2002) (endorsing a definition of "intercept" to mean "acquisition contemporaneous with transmission").[15] Thus, § 631(a) claims can be predicated upon "simultaneous," unknown duplication of a user's communications to the intended recipient—which is exactly what Plaintiffs allege. *See* ¶¶ 105-107, 114-15, 138-142, 199-203.

[15] The Ninth Circuit recently held that simultaneous interception of communications by Facebook violates CIPA where the plaintiffs alleged they visited websites other than Facebook, and that Facebook used plug-ins to "replicate[ ] and send [ ] user data to Facebook through a separate, but simultaneous, channel in a manner undetectable by the user." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 596 & 608 (9th Cir. 2020). The court explained that "simultaneous, unknown duplication and communication of GET requests do not exempt a defendant from liability under the party exception.... Permitting an entity to engage in the unauthorized duplication and forwarding of unknowing users' information would render permissible the most common methods of intrusion, allowing the exception to swallow the rule." *Id*. at 608.

## III. PLAINTIFFS STATE VIABLE CONSUMER PROTECTION ACT CLAIMS.

### A. Plaintiffs State a Viable Claim under the Illinois Consumer Fraud Act.

Although not denying the use of tracking technologies to surreptitiously collect and divulge PHI without consent, Aspen argues that no deception is alleged and Plaintiffs were not injured. When both unfair and deceptive practices are alleged, such as in this case, "deceptive practices in violation of the ICFA must be plead with sufficient particularity under Fed. R. Civ. P. 9(b), while those alleging unfair practices need only meet the notice pleading standards of Fed. R. Civ. P. 8(a)." *Armbrister v. Pushpin Holdings, LLC*, 896 F. Supp. 2d 746, 754 (N.D. Ill. 2012).

First, Aspen argues that no deception is alleged because the standard under Rule 9(b) is not met and Plaintiffs were not personally deceived. *Compare* MTD at 24-26, *with e.g.*, ¶¶ 489-518. Plaintiffs readily satisfy Rule 9(b) for their deceptive practices claim because they allege Aspen's (who) misleading statements in its privacy policy, representing that the information collected from Plaintiffs would be safeguarded (what, where and how), to Plaintiffs at the relevant times (when), that made Plaintiffs believe their PHI would be protected, when it was not. *Compare, e.g.*, ¶¶ 9-10, 506, *with Sanchez v. Walmart Inc.*, 2024 WL 2132426, at *1, 8 (N.D. Ill. May 13, 2024) (explaining that plaintiff must "plead with particularity the circumstances constituting fraud and identify the who, what, when, where, and how of the alleged fraud."). Plaintiffs also allege they were personally deceived: "Plaintiffs understandably and reasonably believed and trusted that their Private Information provided to Aspen via the Site would be kept confidential and secure and would be used solely for authorized purposes." ¶ 67; *see also* ¶¶ 480. And Plaintiffs allege Aspen siphoned their PHI to Facebook for marketing and other improper uses without consent—precisely what Defendant promised it would not do (the falsity). *See, e.g.*, ¶¶ 24-26, 30-33 & 222.

Second, Plaintiffs allege that they suffered actual monetary loss in the form of overpaying for Defendant's health care services. *Compare* MTD at 26-27, *with* ¶ 516.[16] Aspen represented that it would safeguard their Private Information and Plaintiffs relied on these representations in seeking healthcare services and using the Website to obtain such services. *See, e.g.*, ¶¶ 506-08. Although the use of the Website is free, Plaintiffs allege that they used the Website to schedule appointments—appointments that Plaintiffs paid actual monetary amounts for. *See, e.g.*, ¶¶ 300, 314, 321, 328, 335, 363 & 376. For example, Plaintiff A.D. used Defendant's Website to book an appointment and "had surgical extractions and received dentures and implants in May 2023." ¶ 300. Accordingly, the fact that Plaintiffs did not make a purchase on the Website does not mean that they were not harmed by Aspen's wrongful disclosures of their PII and PHI.[17]

Third, Plaintiffs can establish an ICFA claim based on the Illinois Personal Information Protection Act ("PIPA"), which provides that a violation of PIPA constitutes an unlawful practice under the ICFA. *See* 815 ILCS 530/20. Defendant argues PIPA does not apply because it is only for data breaches but nowhere in PIPA is it restricted to data breaches.[18] Medical information, as defined by PIPA, "means any information regarding an individual's medical history, mental or

[16] Aspen disputes only whether Plaintiffs have alleged the requisite injury for their unfair practices claim but no other element. Because Plaintiffs have alleged actual injury, their unfair practices claim under the ICFA should survive a motion to dismiss.

[17] Especially given that Plaintiffs purchased healthcare services from Aspen and utilized its Website with the belief that their Private Information would be protected and not disclosed to unauthorized third parties. *See also Swiatek v. CVS Pharmacy, Inc.*, 2024 WL 1328801, at *5-6 (N.D. Ill. Mar. 28, 2024) (collecting cases holding actual damages for ICFA purposes where plaintiffs alleged they would not have used the product or they were deprived of the benefit of the bargain); *Thomas v. Walmart Inc.*, 2024 WL 1050179, at *10 (N.D. Ill. Mar. 11, 2024) (finding factual argument regarding the economic injury premature at the pleading stage).

[18] Unlike Aspen, several healthcare entities using similar tracking technologies have provided patients with notice that their Private Information was disclosed to third parties. *See* ¶ 47, n.26.

physical condition, or medical treatment or diagnosis by a healthcare professional, ***including such information provided to a website or mobile application***." 815 ILCS 530/5 (emphasis added). And PIPA requires a data collector that stores personal information to "implement and maintain reasonable security measures to protect those records from unauthorized access, acquisition, destruction, use, modification, or ***disclosure***." 815 ILCS 530/45 (emphasis added). Here, Plaintiffs have sufficiently alleged that they provided medical information to Aspen (a data collector) through its Website, which it then disclosed to unauthorized third parties. *See, e.g.*, ¶¶ 8-11 & 48.

**B. Plaintiffs Allege Violations of the Washington Consumer Protection Act.**

A claim for violation of the WCPA requires (i) an unfair or deceptive act or practice; (ii) occurring in trade or commerce; (iii) public interest impact; (iv) injury to plaintiff in his or her business or property and (v) a causal relationship between the unfair or deceptive act and the resulting injury. *See, e.g.*, *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co*., 105 Wn.2d 778, 785-93 (1986). Plaintiffs' allegations meet every element of this claim and Aspen only challenges injury and causation. *Compare* MTD at 30-31, *with* ¶¶ 583-93.

The WCPA's injury requirement is satisfied if "plaintiffs property interest or money is diminished because of the unlawful conduct even if the expenses caused by the statutory violation are minimal" or the injury consists only of "unquantifiable damages" or "[p]ecuniary losses occasioned by inconvenience." *Panag v. Farmers Ins. Co. of Wash*., 166 Wn.2d 27, 57-58 (2009) (internal citations and quotations omitted). Here, Plaintiffs allege that they possess a property interest in their Private Information, which is a form of "currency" for which a market exists and which companies will pay a premium to obtain. *See* ¶¶ 278-99. Plaintiffs further allege that through its unfair and deceptive acts, Aspen extracted and disseminated this Private Information without appropriate consideration or compensation to Plaintiffs. *See, e.g.*, ¶¶ 30-31. Plaintiffs have therefore been deprived of the value inherent in their personal information. *See, e.g.*, ¶¶ 278-99

(describing the value of health data in particular, the price companies pay consumers for it and how the value of Plaintiffs' data diminished through Aspen disclosing it to advertising giants).[19]

Aspen outright ignores Plaintiffs' allegations regarding their property injuries and asserts that Plaintiffs have only alleged injury to a privacy interest. MTD at 31. While Plaintiffs have, indeed, alleged that their privacy interests were invaded—in addition to the property injuries described herein—their privacy injuries are coexistent with their property-based injuries. Numerous Washington cases support WCPA claims based on the unauthorized disclosure of information. *See, e.g.*, *Huong Hoang v. Amazon.com, Inc.,* 2012 WL 1088165, at *6 (W.D. Wash. Mar. 30, 2012) (unauthorized publication of plaintiff's age); *Buckley v. Santander Consumer USA, Inc*., 2018 WL 1532671, at *3 (W.D. Wash. Mar. 29, 2018) (unauthorized disclosure of consumer's social security number, driver's license, address and other personal information to third parties). As such, Plaintiffs sufficiently plead injury.

Although Plaintiffs sufficiently plead causation, Aspen attempts to isolate Plaintiff E.W.'s allegations to argue that they (alone) do not allege that Aspen's unfair or deceptive practices caused Plaintiff E.W. harm, distorting the complaint to claim that Plaintiff E.W. was merely "using Aspen Dental's website for their own benefit, to gather information." MTD at 31. This myopic approach does not present a credible view of the FAC as a whole. Plaintiffs allege, for example, that:

- their Private Information is valuable when kept secure, ¶¶ 278-99;
- Aspen represented that it would keep the Private Information secure, ¶¶ 9-10;
- Plaintiffs believed and reasonably expected that their Private Information would remain

---

[19] These allegations are distinguishable from *Gragg v. Orange Cab Co., Inc*., which only included allegations that plaintiff received text messages that invaded his privacy. *See* 942 F.Supp.2d 1111, 1118-19 (W.D. Wash. 2013). Moreover, courts recognize the value of personal information and the harm caused when it is disclosed without consent. *See, e.g., In re Facebook Privacy Litig.*, 572 F. App'x 494, 494 (9th Cir. 2014) (holding that plaintiffs' allegations of harmed were sufficient to show damages for their breach of contract and fraud claims); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 462 (D. Md. 2020) (recognizing "the value that personal identifying information has in our increasingly digital economy").

private, ¶¶ 67 & 240-53;

- such considerations are material to Plaintiffs, who "would understandably not consent or they would demand significant compensation for the use of their private and valuable health information" had they known that Aspen would disclose it to third parties, ¶¶ 31, 253 & 586-88;[20]
- Aspen wrongfully disseminated Plaintiffs' Private Information to Facebook and Google through hidden software it customized for the specific purpose of disseminating that information, ¶¶ 93-96;
- Aspen omitted its misuse and unauthorized disclosure of the Private Information, despite being notified of it by undersigned counsel in April 2023, and continues to use tracking technologies, ¶¶ 46-49;
- Aspen obtained a benefit from the deception through improved advertising and bolstered revenues, ¶¶ 98, 268-71 and
- Plaintiffs suffered from diminished value of their Private Information, ¶¶ 286, 298.

Plaintiffs' FAC puts Aspen on notice of the WCPA claim, including causation.[21]

### C. Plaintiffs Allege a Claim under California's Unfair Competition Law.

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Each of the UCL prongs provides a "separate and distinct theory of liability" and an independent basis for relief. *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (cleaned up). Plaintiff C.M. asserts Aspen's conduct violates the "unlawful" and "unfair" prongs. ¶¶ 614-32. Aspen asserts two incorrect arguments regarding the UCL claim.

---

[20] "Implicit in the definition of 'deceptive' under the WCPA is the understanding that the practice misleads or misrepresents something of material importance." *Nguyen v. Doak Homes, Inc.*, 140 Wash. App. 726 (2007) (citation omitted). A party engages in fraud "if it conceals a material fact from the other party." *Wash. Mut. Sav. Bank v. Hedreen*, 125 Wash. 2d 521 (*en banc*). A material fact is one "to which a reasonable person would attach importance in determining his or her choice of action in the transaction in question." *Aspelund v. Olerich*, 56 Wash. App. 477 (1990).

[21] Aspen evasively argues that Plaintiffs' FAC is insufficient because it does not allege they "used the website because of any representation Aspen [] made regarding the safeguarding of their *website traffic*." MTD at 31 (emphasis added). This misses the point. Due to Aspen's custom installation of the Pixel and tracking technologies on its Website, Plaintiffs' "web traffic" included *Aspen's secretly facilitated transmission of Plaintiffs' PHI to Facebook and Google for marketing purposes without Plaintiffs' consent*—something that Aspen affirmatively and fraudulently promised it would not do, ¶¶ 9-10, and something that any reasonable person would—and Plaintiffs did—expect their healthcare provider to refrain from doing, *see* ¶¶ 240-53.

First, in a single sentence, Aspen argues that Plaintiffs failed to state facts showing their personal information was disclosed to a third party and therefore failed to establish any "unlawful, unfair, or fraudulent" business practice. MTD at 31-32. But Plaintiffs' FAC shows these facts in technicolor. The FAC pleads that Aspen intentionally disclosed Plaintiffs' Private Information (including Plaintiff C.M.'s PHI) to third parties through Aspen's installation and use of tracking pixels so that it could secretly disclose that personal information for financial gain without consent—in violation of industry standards, state and federal law, the reasonable expectation of healthcare patients and its representations to Plaintiffs. *See, e.g.*, ¶¶ 8, 20, 28, 137, 268, 356-62 & 621-29. By so pleading, Plaintiff C.M. not only supports liability under the unfair prong, but also under the unlawful prong due to the numerous laws Aspen's conduct violated, including but not limited to Section 5 of the FTCA and HIPAA. *See* ¶¶ 615-16, 73-82 & 222-33.

Aspen next argues that Plaintiffs do not have standing under the UCL because they failed to show how Aspen caused them loss of money or property. To have standing to assert a UCL claim, a plaintiff needs to have "suffered injury in fact and ... lost money or property as a result of the unfair competition." *Rubio*, 613 F.3d at 1203. "To show that they have lost money or property, Plaintiffs must demonstrate some form of economic injury, which is itself a classic form of injury in fact." *Brown v. Google LLC*, 2021 WL 6064009, at *15 (N.D. Cal. 2021) (cleaned up). Here, Plaintiff C.M. alleges that they were injured when their Private Information was wrongfully divulged and misused (including for marketing and retargeting without consent), *see*, *e.g.*, ¶¶ 8, 20, 28, 137 & 268, which, in C.M.'s case, subjected them to unsolicited targeted advertising related to the medical conditions and treatments they disclosed to Aspen, ¶ 362. Plaintiff C.M. alleges loss of benefit of the bargain and diminution in value of their Private Information. ¶¶ 51 & 630-32.

Recent case law confirms that benefit of the bargain damages constitute economic injury for purposes of a UCL claim. *See*, *e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 2016 WL 3029783, at *14 (N.D. Cal. May 27, 2016) (holding that plaintiffs that could recover benefit of the bargain losses had alleged economic injury under the UCL); *E.H. v. Meta Platforms, Inc.*, 2024 WL 557728, at *5 (N.D. Cal. Feb. 12, 2024) (finding that users "paid more for their services from [their medical provider] than they otherwise would have had they know about Meta's interception of their information." Courts also recognize that plaintiffs suffer a loss of money under the UCL when they provide "valuable data" and "receive[] no money in return"—just as Plaintiff C.M. lost valuable data to Facebook without any compensation. *See Brown*, 2023 WL 5029899, at *39. In the contemporary digital marketplace in which we are embedded, there can be no lasting argument that this data has no value—companies regularly purchase such data to target specific consumers, as happened here, or to refine their products. A market exists for Plaintiffs' Private Information, and "[n]umerous courts have recognized that plaintiffs who lose personal information have suffered an economic injury." *Klein v. Facebook, Inc.*, 580 F. Supp. 3d 743, 803 (N.D. Cal. 2022).[22] As in *Brown*, Plaintiffs cite studies and reports showing an active market for users' private data and the particularly high value to advertisers, and to Aspen. ¶¶ 278-98. As such, Plaintiff C.M. alleges economic loss, establishing statutory standing for their UCL claim.

**D. Plaintiffs' California CMIA Claim should not be Dismissed.**

CMIA provides that "no provider of health care shall disclose medical information regarding a patient of the provider of health care without first obtaining an authorization." Cal.

[22] Importantly, Plaintiffs need not hold the intention to actually sell the data they allege was diminished in value. *See, e.g.*, *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1204 (S.D. Fla. 2022) ("plaintiffs need not reduce their PHI or PII to terms of dollars and cents in some fictitious marketplace where they offer such information for sale to the highest bidder."); *In re Marriott*, 440 F. Supp. 3d at 462.

Civ. Code §§ 56.10, 56.101 (cleaned up). Aspen erroneously argues that Plaintiffs do not allege that (1) their medical information was transmitted or (2) anyone viewed or accessed it. *Compare* MTD at 32-34, *with* ¶¶ 605-612. Aspen argues that Plaintiff C.M. alleges facts only regarding their activities on its "public website," which it claims is insufficient to state a claim (relying on *Smith*) and that Plaintiff C.M.'s allegations regarding Aspen's disclosure of scheduling appointments only shows they were a patient, which is not medical information (relying on *Eisenhower Med. Ctr. v. Super. Ct.*, 226 Cal. App. 4th 430, 436 (2014) & *Kurowski v. Rush Sys. for Health,* 659 F. Supp. 3d 931 (N.D. Ill. 2023)). These arguments ignore critical pleaded facts and case law. Aspen disclosed, without Plaintiff C.M.'s consent, their first and last name, birth date, email address, phone number, reason for visiting Aspen, identifying cookies and IP address and the fact that they were making appointments for specific medical conditions. ¶¶ 152-54, 356-358. While CMIA's definition of "medical information" and HIPAA's definition of IIHI and PHI are not identical, they share a material, common meaning relevant to the Court's analysis. *See Cousin II*, 2023 WL 8007350, at *4 ("[T]he California Civil Code's definition for information protected by CMIA largely tracks HIPAA's definition of PHI."). The FAC also cites the OCR Bulletin, which provides how IIHI/PHI may be transmitted on "public" websites, triggering the protection of the HIPAA Rules (which prohibit unauthorized disclosure of that information). *See* ¶ 216.

Under the facts pleaded in the FAC, there is no material difference between HIPAA's Rules and CMIA's prohibitions for disclosing, without authorization, Plaintiff C.M.'s Private Information. *See Cousin II*, 2023 WL 8007350, at *2 (denying motion to dismiss CMIA claim alleging healthcare provider collected and shared browsing activity related to provision of healthcare where a public-facing website was at issue). Other courts, like in *Cousin II*, have looked closer at what, *specifically*, healthcare companies have disclosed under similar uses of the Meta

Pixel and found privacy violations concerning public-facing websites, particularly at the motion to dismiss stage, where greater details of the defendant's disclosures require discovery. *See, e.g.*, *In re Meta Healthcare Pixel Litigation*, 2024 WL 333883, at *1-7 (N.D. Cal. Jan. 29, 2024) (denying motion to dismiss and finding plaintiffs' privacy claims were not foreclosed because their communications with healthcare providers may have been through publicly available webpages).

Plaintiff C.M. also plausibly pleads that their medical information was "improperly viewed or otherwise accessed." *Cousin II*, 2023 WL 8007350, at *4 (citation omitted). Plaintiffs allege Facebook "explicitly uses the hashed information it gathers to link Pixel-transmitted data to Facebook profiles" and "Facebook has read, understood, analyzed, and expressly taken action to match the shared PHI with specific individuals, with the express purpose of targeting those individuals with ads based on their data (here, PHI) that was shared and used to create Defendant's Custom Audiences—all at Defendant's request." ¶¶ 148 & 150. Plaintiffs plead "[t]his disclosed PHI and PII allows Facebook to know that a specific patient is seeking confidential medical care and the type of medical care being sought, and in addition to permitting Defendant to target those persons with Defendant's ads, Facebook also then sells that information to marketers who will online target Plaintiffs and Class Members." ¶ 151; *see also* ¶¶ 148-54. Plaintiff C.M. also pleads that "[a]fter providing Private Information to Aspen through the Website, Plaintiff C.M. immediately began seeing targeted health ads as they scrolled through their Facebook account, including ads for dental treatments and for dental healthcare providers in their area." ¶ 362.

To support its argument, Aspen unpersuasively cites *Sutter Health v. Superior Court* and *Regents of California v. Superior Court*, which found no CMIA claims where there were no allegations that health information in a data breach had actually been viewed or accessed. *See*, 227 Cal. App. 4th 1546, 1553 (2014); 220 Cal. App. 4th 549, 570 (2013). But this is not a data breach

case; rather, this is a healthcare pixel case in which data was viewed and accessed by Facebook and Google because that is the purpose of the tracking technologies Aspen employs. In *Cousin II*, the court rejected defendant's argument that plaintiff failed to plead that the information was not "viewed" by a "human being" as inappropriate at the motion to dismiss stage and found that plaintiff had pleaded Meta regularly viewed the information and used that information for targeted advertising. 2023 WL 8007350, at *4. Similarly, in *Doe v. Regents of University of California,* the court denied a motion to dismiss where defendant argued that plaintiff had not sufficiently alleged the information was viewed by an authorized party, finding that "[t]his challenge fails because plaintiff has alleged that Meta acted upon the information transmitted to it by tailoring advertisements to her based on her medical condition. This is sufficient to raise a plausible claim that her medical information was inappropriately accessed." 672 F. Supp. 3d 813, 819 (N.D. Cal. 2023). Plaintiffs allege the same thing here. The *Regents* court also appropriately noted that "to require more would place the burden on her to describe UC Regents' technical systems without the benefit of discovery." *Id*. Thus, Plaintiff C.M. plausibly alleges their CMIA claim.

## IV. PLAINTIFFS' COMMON LAW CLAIMS SURVIVE A MOTION TO DISMISS.

### A. Plaintiffs Adequately Allege Negligence Because It Is Based on More Than Physician-Patient Confidentiality.

Aspen challenges only the first element of Plaintiffs' negligence claim, *i.e.* that it owed them a duty of care. MTD at 35-36. Plaintiffs establish a duty owed to them by Aspen. *See, e.g.*, ¶¶ 440-45. "The existence of a common law duty is a question of law and is shaped by public policy considerations." *Grant v. South Roxana Dad's Club*, 381 Ill.App.3d 665, 669 (2008). "The touchstone of the duty analysis is to ask whether the plaintiff and defendant stood in such a relationship to one another that the law imposes on the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Krywin v. Chicago Transit Authority*, 238 Ill.2d 215,

226 (2010). When determining whether there is a duty of care, courts look at (i) reasonable foreseeability of the injury, (ii) likelihood of the injury, (iii) magnitude of the burden of guarding against the injury and (iv) consequences of placing that burden on defendant. *See, e.g.*, *Durpetti v. Menard, Inc.*, 2023 WL 4864994, at *5 (N.D. Ill. July 30, 2023).

Aspen nevertheless argues that Plaintiffs' negligence claim fails because the physician-patient relationship does not establish a common law duty of care under Illinois law. MTD at 35. However, Plaintiffs' negligence claim identifies two additional grounds, aside from HIPAA, giving rise to a duty on Aspen to keep Plaintiffs' Private Information confidential, which plainly governs Aspen's collection of sensitive, Private Information from the users of its website.

Plaintiffs first allege that Aspen owed them a duty to "exercise reasonable care to secure, safeguard and protect their highly sensitive Private Information." ¶ 440. Courts in this district recognize a common law duty to maintain reasonable security measures to prevent unauthorized disclosure of private information, which includes medical information. *See, e.g.*, *Wittmeyer v. Heartland Alliance for Human Needs & Rights*, 2024 WL 182211, *2 (N.D. Ill. Jan. 17, 2024) (recognizing that a duty to protect personal information exists under Illinois common law); *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 590 (N.D. Ill. 2022) (finding plaintiffs sufficiently identified the security measures defendants fell short of implementing); *Flores v. AON Corp.*, 2023 IL App (1st) No. 230140 ¶ 10 (similar). Plaintiffs also allege that Aspen assumed a duty to protect their Private Information by making public representations that it would not disclose its patients' Private Information to third parties without consent. *See*, *e.g.,* ¶¶ 9-10.

The relationship between Plaintiffs and Aspen, coupled with its express promises to safeguard their Private Information from unauthorized disclosures, establishes a duty of care under Illinois law. It is foreseeable that the failure to prevent unauthorized disclosure of Plaintiffs'

Private Information can lead to serious injury. For instance, the OCR Bulletin identifies the many injuries that can flow from the unauthorized disclosure of protected health information. *See* ¶ 50. Moreover, the likelihood of Plaintiffs' injuries arising from an unauthorized disclosure is palpable, as demonstrated by the extensive, detailed, and explicit HIPAA regulations that are designed to prevent such injuries. *See, e.g.*, ¶¶ 222-33. Next, the burden for Aspen to maintain the confidentiality of its patients' Private Information is not an issue given that Aspen: (i) is already required to comply with state and federal regulations that prohibit unauthorized disclosures and (ii) made affirmative, public-facing representations that it would protect its patients' Private Information. *See, e.g.*, ¶¶ 9-10, 222-33. Finally, Aspen would suffer no significant, if any, burden in preventing the unauthorized disclosure of Private Information, given the responsibility it already has to comply with the extensive regulations prohibiting this conduct. Accordingly, all four factors lead squarely to the conclusion that Aspen owes its patients and users of its website, including Plaintiffs, a common law duty to prevent the unauthorized disclosure of their Private Information.

**B. Plaintiffs have Alleged Detriment for their Unjust Enrichment Claim.**

"Unjust enrichment is a common-law theory of recovery or restitution that arises when the defendant is retaining a benefit to the plaintiff's detriment, and this retention is unjust." *Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). Plaintiffs' allegations support their unjust enrichment claim. See, e.g., ¶¶ 159-69, 264-77. Aspen incorrectly claims that Plaintiffs' unjust enrichment claim must fail if Plaintiffs do not maintain their breach of implied contract count (which Plaintiffs have withdrawn). This is not the law, and Plaintiffs' unjust enrichment claim may be maintained alongside any of Plaintiffs' remaining causes of action. *See Cleary*, 656 F.3d at 517 (if an unjust enrichment claim "rests on the same improper conduct alleged in another claim, then [it] will be tied to this related claim—and ... will stand or fall with the related claim."). Aspen also

attacks the pleaded value of Plaintiffs' Private Information, which Plaintiffs support in detail in the FAC. *See*, e.g., ¶¶ 278-99. Recent case law finds unjust enrichment claims well-fitted to the specific wrongful conduct alleged here.[23]

## CONCLUSION

For these reasons, this Honorable Court should deny Aspen's motion, grant leave to amend to address any pleading deficiencies and order all such other relief as equity and justice require.

Date: May 22, 2024

Respectfully submitted,

By: /s/ *David S. Almeida*

**ALMEIDA LAW GROUP LLC**
David S. Almeida (ARDC 6285557)
Britany A. Kabakov (ARDC 6336126)
849 W. Webster Avenue
Chicago, Illinois 60614
Ph: (312) 576-3024
david@almeidalawgroup.com
britany@almeidalawgroup.com

**PEIFFER WOLF CARR**
**KANE CONWAY & WISE, LLP**
Brandon M. Wise (ARDC 6319580)
One U.S. Bank Plaza, Suite 1950
St. Louis, MO 63101
Ph: (314) 833-4825
bwise@peifferwolf.com

Andrew Ready Tate – GA Bar #518068*
235 Peachtree Street NE, Suite 400
Atlanta, GA 30303
Ph: (404) 282-4806
atate@peifferwolf.com

**pro hac vice* granted

*Attorneys for Plaintiffs & the Putative Classes*

[23] *See, e.g.*, *Katz-Lacabe*, 2023 WL 6466195, at *8 (Fla.); *Doe v. Meta Platforms, Inc.*, 2023 WL 5837443, at *13 (Cal.); *Group Health*, 2023 WL 8850243, at *4 (Minn.); *MarinHealth Med. Grp., Inc.*, 2024 WL 217841, at *6 (Cal.); *Kane*, 2024 WL 1178340, at *15-16 (N.Y.).

## CERTIFICATE OF SERVICE

I, the attorney, hereby certify that on May 22, 2024, I filed the attached with the Clerk of the Court using the Court's electronic filing system and will send such filing to all attorneys of record.

*/s/ David S. Almeida*