**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

A.D., R.G., T.B., E.W., M.H., S.B., C.C., K.F., C.M., A.O., A.H., and C.A., *individually and on behalf of all others similarly situated*,

Plaintiffs,

v.

ASPEN DENTAL MANAGEMENT, INC.,

Defendant.

Case No. 1:24-cv-01404
Hon. Virginia M. Kendall

**DEFENDANT ASPEN DENTAL MANAGEMENT, INC.'S REPLY**
**IN SUPPORT OF RULE 12(B)(6) MOTION TO DISMISS**

## INTRODUCTION

Defendant Aspen Dental Management, Inc. ("Aspen Dental") respectfully submits the following reply brief in support of its Motion to Dismiss Plaintiffs' Amended Complaint:

### I. The Tortious or Criminal Conduct Exception Does Not Apply to Plaintiffs' Allegations as a Matter of Law.

Plaintiffs urge the Court to follow two recent decisions allowing federal Wiretap Act claims against healthcare providers for using digital analytical tools on their websites to survive motions to dismiss. *See Kurowski v. Rush System for Health*, 2023 WL 8544084, at *2-3 (N.D. Ill. Dec. 11, 2023); *Hartley v. University of Chicago Med. Ctr.*, 2024 WL 1886909, at *2-3 (N.D. Ill. Apr. 30, 2024). Respectfully, these decisions are wrongly decided, and fail to analyze the Seventh Circuit's lead opinion applying the tortious or criminal conduct exception. *See Desnick v. American Broadcasting Cos., Inc.*, 44 F.3d 1345 (7th Cir. 1995).

In *Desnick*, the Seventh Circuit held application of the exception should not be driven by an alleged legal violation, but instead should focus, in accord with the statutory text, on the defendant's alleged *purpose* for making the interception. *Id.* at 1353-54; *see also* 18 U.S.C. § 2511(2)(d) (providing that the exception only applies where the "communication is intercepted *for the purpose of* committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State") (emphasis added); *see also* ECF 30, Opp. at 5-6 (citing *Desnick*, 44 F.3d at 1353) (conceding "[c]ourts in the Seventh Circuit focus on whether the purpose or the interception—its intended use—was criminal or tortious.").

As the Seventh Circuit explained: "Maybe the program as it was eventually broadcast was tortious, for we have said that the defamation count was dismissed prematurely." *Id.* "*But there is no suggestion that the defendants sent the testers into the Wisconsin and Illinois offices for the purpose of defaming plaintiffs by charging tampering with the glare machine*." *Id.* (emphasis added). "The purpose, by the plaintiffs' own account, was to see whether the Center's physicians would recommend cataract surgery on the testers." *Id.*

As Judge Buchwald subsequently held in analyzing *Desnick* and the other relevant appellate authority on this point in the *DoubleClick* decision: "Under section 2511, 'the focus is not upon whether the interception itself violated another law; it is upon whether the purpose for interception—*its intended use*—was criminal or tortious.'" *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 516 (S.D.N.Y. 2001) (emphasis added, quoting *Sussman v. Am. Broadcasting Cos., Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999)). "Where the purpose of a taping is not illegal or tortious, ***but the means are***, the victims must seek redress elsewhere." *Id.* (emphasis added); *see also Nienaber v. Overlake Hosp. Med. Ctr.*, No. 2:23-cv-01159-TL, 2024 WL 2133709, at *15 (W.D. Wash. My 13, 2024) (finding tortious or criminal conduct exception did not apply to

healthcare pixel litigation because plaintiffs failed to plead tortious or criminal conduct separate from the alleged recording, interception or transmission of information); *B.K. v. Eisenhower Med. Ctr.*, No. No. C23-2092, 2024 WL 878100, at *4 (C.D. Cal. Feb. 29, 2024) *partial reconsideration* 2024 WL 2037404 (C.D. Cal. Apr. 11, 2024) (same).

In *Rush*, the court incorrectly allowed the tortious or criminal conduct exception analysis to be driven by whether the alleged interception might have violated the law, rather than the defendant's alleged purpose for making the interception. *See Kurowski v. Rush System for Health*, 659 F. Supp. 3d 931, 938-39 (N.D. Ill. 2023) (refusing to apply the exception because "Kurowski has not alleged sufficient facts, however, to support an inference that Rush disclosed its patients' individually identifiable health information, at least as that term is defined by the statute"); *Kurowski v. Rush System for Health*, 683 F. Supp. 3d 836, 844 (N.D. Ill. 2023) (same; "The type of metadata that Kurowski alleges was transmitted via third-party source code does not in the least bit fit into that category."). In contrast, where the court found that plaintiffs had adequately alleged a potential HIPAA violation, the court held that the tortious or criminal conduct exception could not apply to bar the claim. *Kurowski*, 2023 WL 8544084, at *3 (finding exception applied because plaintiffs had alleged "individually identifiable health information" was at issue under 42 U.S.C. § 1320d-6, and thus also "[a]ll of these allegations, taken together, are sufficient to invoke the HIPAA-exception-to-the-party-exception quoted earlier").

Respectfully, allowing an alleged legal violation to drive the exception analysis is contrary to the Seventh Circuit's holding in *Desnick*. *See also Hartley*, 2024 WL 1886909, at *2 (allowing Wiretap Act claim to survive dismissal where plaintiff made "plausible allegations of IIHI [individually identifiable health information] that were acquired by Defendant and then disclosed to Meta," likewise without analyzing *Desnick*).

Like *Desnick*, the undisputed ***permissible purpose*** is evident from the face of Plaintiffs' Amended Complaint. "One of the primary reasons that Aspen decided to embed Pixels and other tracking technologies on its Website was to improve marketing by creating campaigns that maximize conversions and thereby decrease costs to Aspen and boost its revenues." ECF No. 7, Am. Compl. ¶ 264; *see also, e.g., id.* ¶ 271 ("In exchange for disclosing the Private Information of their accountholders and patients, Aspen is compensated by Facebook, Google and likely other third parties in the form of enhanced advertising services and more cost-efficient marketing on their platform."); *id.* ¶ 456 (alleging Aspen Dental "installed the Pixels" on its website to "track and disseminate individual's communications on the Website for the purpose of marketing and advertising.").

Thus, like *Desnick*, Plaintiffs' allegations in their Amended Complaint show as a matter of law why the tortious or criminal conduct exception should not apply. As numerous courts have held, alleged interceptions made for the purpose of "marketing" and "profits" fall outside the intended scope of the exception. *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d at 518-19; *Katz-Lacabe v. Oracle America, Inc.* 2024 WL 1471299, at *3, 5 (N.D. Cal. Apr. 3, 2024) ("The fact data collection or sales might at some later point be deemed tortious does not justify application of the crime-tort exception."); *Cohen v. Casper Sleep Inc.*, 2018 WL 3392877, at *3-4 (S.D.N.Y. Jul. 12, 2018) (refusing to apply the exception to alleged internet tracking case).

Accordingly, the Court should dismiss Plaintiffs' federal Wiretap Act claim with prejudice.

## II. Plaintiffs' State Wiretap Act Claims Should Likewise Be Dismissed.

### A. The Information at Issue is "Record Information," Not "Contents."

Plaintiffs first argue that they have plausibly alleged that the "contents" of their communications were intercepted under the Florida Security of Communications Act ("FSCA"),

the Pennsylvania Wiretapping and Electronic Surveillance Control Act ("WESCA") and the California Invasion of Privacy Act ("CIPA"). ECF No. 30, Opp. at 11-14. But the information at issue here amounts to record information—nothing more.

Recently, in *Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, No. cv 22-4674, 2023 WL 7017734 (E.D. Pa. Oct. 10, 2023), the district court dismissed a federal Wiretap Act claim due to a lack of plausible allegations that "contents" were intercepted on a healthcare provider website. The *Murphy* plaintiffs alleged defendant used the Meta Pixel to track their usage on its website and patient portal. *See id.* at *1. The alleged communications "pertain[ed] to their medical symptoms, conditions, and concerns, medical appointments, medical tests and test results, doctors' visit notes, medications and treatments, and health insurance and medical bills." *Id.* at *3. The court rejected those descriptions as "vague allegations" amounting to "no more than conclusions, [that] are not entitled to the assumption of truth." *Id.* (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 131 (3d Cir. 2010)).

So too, in *Eisenhower*, 2024 WL 878100, in which plaintiffs alleged the medical center allowed Meta to intercept "details about their medical conditions, treatments and providers sought, and appointments." *Id.* at *1. The *Eisenhower* plaintiffs further alleged that they used the defendant's website "to research healthcare, providers and communicate with them, research particular medical concerns and treatments, fill out forms and questionnaires, schedule and attend appointments, and perform other tasks related to specific medical inquiries and treatment." *Id.* at *2. They also "used the Patient Portal to refill prescriptions, look at bills and payments, and to see test results and notes from appointments." *Id.*

The *Eisenhower* court dismissed the wiretapping claim, concluding plaintiffs failed to plausibly allege "what, if any, medical information or medical records were transmitted or

disclosed." *Id.* at *4 & *5 n.5. Instead, the 90-page complaint included "less than four pages of vague allegations about Plaintiffs and their experiences with Defendant," and was "replete with conjectures and hypothetical scenarios and patients." *Id.* ("Plaintiffs fail to allege any specificity as to what medical information was allegedly disclosed or when it was disclosed.").

This Court should follow the developing precedent and dismiss Plaintiffs' FCSA, WESCA, and CIPA claims for failure to adequately allege the transmitted data is "content."

**B. The Illinois Eavesdropping Act Claim Does Not Extend to Plaintiffs' Claim.**

Plaintiffs A.D, R.G., C.C. and K.F. ask the Court to interpret the Illinois Eavesdropping Act beyond its plain meaning and the Legislature's stated purpose. Specifically, Plaintiffs argue the term "private conversation" under the Illinois Eavesdropping Act is not limited to oral communications because in 2014 the Illinois legislature amended the definition of the term private conversation "to include communications 'transmitted between the parties ***by wire or other means***.'" ECF No. 30, Opp. at 15 (quoting 720 ILCS 5/14-1(d)) (emphasis in original).

The operative language of the statute remains unchanged, however, and requires an "oral communication": "(d) Private conversation. For purposes of this Article, 'private conversation' means ***any oral communication*** between two persons, whether in person or transmitted by the parties by wire or other means, when one or more of the parties intended the communication to be of a private nature under circumstances reasonably justifying that expectation." ILCS 720 § 5/14-1(d) (emphasis added).

Plaintiffs appear to argue this portion of the statute must now include electronic communications, because oral communications could never be transmitted by wire. This is not correct. *See* 18 U.S.C. § 2510(1) (defining "wire communication" to mean "any *aural* transfer made in whole or in part through the use of facilities for the transmission of communications by

the aid of *wire*, cable or other like connection") (emphasis added); *Webster's Ninth New Collegiate Dictionary*, at pg. 116 (Merriam Webster 1987) (defining the word "aural" to mean "of or relating to the ear or to the sense of hearing"); *see also* https://www.thefreedictionary.com/telephone+wire (defining "telephone wire" to mean "the wire that carries telegraph and telephone signals");

Moreover, as amended, private communications—limited to oral communications—continue to require two-party consent, *see* 720 ILCS 5/14-2(a) (1, 2), whereas private electronic communications now only require one-party consent. *See* 720 ILCS 5/14-2(a)(3); *compare Henyard v. MV Transportation*, 2019 WL 1399953, at *2 (N.D. Ill. Mar. 28, 2019) (holding defendant violated 720 ILCS 5/14-2(a)(1) when it recorded bus driver's conversations with passengers without bus driver's consent) *and Cannon v. City of Anna, Illinois*, 2023 WL 2349344, at *5 (S.D. Ill. Mar. 3, 2023) (seeking to strike transcript of student's conversation with school principal under 720 ILCS 5/14-2(a)(2) because student recorded conversation without principal's consent) *with Zak v. Bose Corp.*, 2020 WL 2762552, at *2, 3 (N.D. Ill. May 27, 2020) (holding"[b]ecause Bose was a party to the communications, it cannot be held liable under [720 ILCS 5/14-2(a)(3) of the] Wiretap Act or the [Illinois] Eavesdropping Statute.").

Plaintiffs next argue that 720 ILCS 5/14-2(a)(5) prohibits "an eavesdropper" from using or disclosing information without "the consent of all parties." ECF No. 30 at 15. However, 720 ILCS 5/14-2(a)(5) addresses how a party "uses or discloses" information "*obtained from a private conversation or private electronic communication* in violation of this Article[.]" 720 ILCS 5/14-2(a)(5). Because Plaintiffs fail to adequately allege a violation under 720 ILCS 5/14-1(d), they cannot allege a violation under 720 ILCS 5/14-2(a)(5). *See Breuder v. Bd. of Trustees of Community College Dist. No. 502,* 2022 WL 279277, at *5, fn. 1 (N.D. Ill. Jan. 31, 2022) (Hamilton could not violate 720 ILCS 5/14-2(a)(5) by using or disclosing those recordings since

they were not "obtained from a private conversation ... ***in violation of this Article***." (emphasis in original)).

Finally, Plaintiffs note that *Rush* also allowed an Illinois Eavesdropping Act claim to survive past a motion to dismiss. ECF No. 30 at 16. This is correct, *see Kurowski*, 683 F. Supp. 3d at 853, but based on a different principal-agent alleged theory of liability that plaintiffs have not alleged here, *see id.* (analyzing 720 ILCS § 5/14-1(c)(2)).

### C. Pixel Technology is Excluded from the Florida Security of Communications Act ("FCSA").

*First*, Plaintiffs M.H. and A.H.'s citation to *Makkinje v. Extra Space Storage, Inc.*, 8:21-cv-2234-WFJ-SPF, 2022 WL 80437 (M.D. Fla. Jan. 7, 2022), a case containing little analysis, to support their contention that pixel technology is a "device" under the FSCA is unpersuasive. ECF No. 30, Opp. at 16l; *see also Makkinje*, 2022 WL 80437, at *2.[1] Rather, the state court's analysis and decision in *Jacome v. Spirit Airlines Inc.*, No. 2021-000947-CA-01, 2021 WL 3087860 (Fla. Cir. Ct. Jun. 17, 2021) has been widely adopted by federal courts in Florida. *See, e.g., Goldstein v. Luxottica of Am*., No. 21-80546-CIV-CANNON/REINHART, 2021 WL 4093295 at *2 (Aug. 23, 2021); *Goldstein v. Costco Wholesale Corp*., 559 F. Supp. 3d 1318, 1320 (S.D. Fla. 2021); *Connor v. Whirlpool Corp.*, No. 21-cv-14180-WPD, 2021 WL 3076477, at *2 (S.D. Fla. July 6, 2021); *Cardoso v. Whirlpool Corp.*, No. 21-CV-60784-WPD, 2021 WL 2820822 at *2 (S.D. Fla. July 6, 2021). This Court should follow Florida federal court decisions and hold that mere website code is not a "device."

*Second*, Plaintiffs M.H. and A.H.'s assertion that the FSCA exclusion under "electronic communications" cannot apply because pixel technology is not "tracking" technology, ECF No.

[1] Indeed, the *Makkinje* court acknowledged that "Defendant may, in fact, be correct that the FSCA does not apply to a commercial website's recording of live chat communications via session replay software" but decided that the issue should be determined at the summary judgement stage. *Makkinje*, 2022 WL 80437, at *2.

30, Opp. at 17, ignores the numerous allegations in Plaintiffs' Amended Complaint claiming pixel technology is "tracking" technology. *See, e.g.,* ECF No. 7, Am. Compl. ¶ 553 (alleging Aspen Dental "embed[ed] the Meta Pixel and other third-party tracking codes on its Website"); *id.* at ¶ 554(f) ("The Pixels, Google Analytics, cookies and other computer codes and programs used by Facebook to effectuate its tracking and interception of Plaintiffs' and Florida Subclass Members' communications while they were used Defendant's Website."). Furthermore, Plaintiffs' hyperbolic assertion that the technology at issue "allow[s] Meta and other third parties to listen in on the contents of highly sensitive communications" ECF No. 30, Opp. at 18, is neither factually nor facially accurate, as Plaintiffs do not make these allegations in their Amended Complaint. *See, generally* ECF No. 7, Am. Compl.

Instead, like the plaintiffs in *Jacome* and *Goldstein*, Plaintiffs M.H. and A.H. allege that the software at issue "tracks" website users' navigation through the website. *See* ECF No. 30, Opp. at 17; *see also* ECF No. 7, Am. Compl. ¶ 554(a) ("[t]he Pixels, Google Analytics, cookies and other tracking codes and programs deployed by Defendant to track Plaintiffs' and Florida Subclass Members' communications while they were navigating Defendant's Website"). Accordingly, Plaintiffs M.H. and A.H.'s FSCA claim should be dismissed with prejudice.

**D. Plaintiff C.A. Has Not Sufficiently Alleged a Pennsylvania Wiretap Act Claim.**

*First*, Plaintiff C.A. argues their Pennsylvania Wiretap Act ("WESCA") claim adequately alleges "contents" and should survive for the same reasons as their FCSA claim. ECF No. 30, Opp. at 18. A number of federal courts have recently dismissed WESCA and federal wiretapping claims under similar facts for failure to allege "contents," i.e., the "intended messages conveyed by the communication[.]" *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106-07 (9th Cir. 2014); *See, e.g.*, *Smidga v. Spirit Airlines, Inc.*, No. 2:22-cv-1578, 23-cv-784 &-895, 2024 WL 1485853 (W.D. Pa.

Apr. 5, 2024) (collecting cases); *Murphy*, 2023 WL 7017734, at *3 (E.D. Pa. Oct. 10, 2023); *Cook v. GameStop, Inc.,* 2023 WL 5529772 (W.D. Pa. Aug. 28, 2023). So, too, here, the Court should dismiss Plaintiff C.A.'s WESCA claim.

*Second*, Plaintiff C.A. argues that they have sufficiently alleged the interception occurred in Pennsylvania because they "used Aspen's Website in Pennsylvania." ECF No. 30, Opp. at 19. However, Plaintiffs' Amended Complaint fails to allege where the *interception* took place. ECF No. 7, Am. Compl. ¶ 18. Moreover, Plaintiffs allege that Aspen Dental's website used "tracking technology" including Meta Pixel and Facebook's Conversions Application Programming Interface ("CAPI"). *Id.* at ¶ 18. Plaintiffs allege CAPI "records and stores [users' site interactions] and stores that information on the Site owner's servers[.]" *Id.* Yet Plaintiffs fail to allege the location of Aspen Dental's servers. *See, generally, id.* Thus, to the extent that Plaintiff C.A. adequately alleges pixel interactions are intercepted in Pennsylvania (they do not), Plaintiff C.A. has failed to adequately allege that purported CAPI interactions were intercepted within the state.

**E. Plaintiffs C.A., S.B. and A.O. Have Not Alleged a Claim Under the Massachusetts Wiretapping Act ("MWA").**

Like Plaintiff C.A., Plaintiffs S.B. and A.O. argue that they adequately allege that their data was intercepted in Massachusetts. Like Plaintiff C.A., they failed to adequately allege that any purported CAPI interactions were intercepted within the statue. Moreover, *Doe v. Boston Med. Ctr. Corp.*, No. 2384CV00326-BLS1, (Suffolk Super Ct.) (Mem. & Ord., Dkt. No. 18, Sept. 15, 2023) ECF No. 30-4, Exh. D, is distinguishable. In *Boston Med. Ctr. Corp.*, plaintiffs alleged defendant added pixel technology to its website from its offices in Massachusetts and Plaintiffs, who were Massachusetts residents, accessed the website from within the state. *Id.* at 8. Here, while, Plaintiffs S.B. and A.O. allege that they are Massachusetts residents, Aspen Dental is

headquartered in Illinois. ECF No. 7, Am. Compl. ¶ 68. Thus, unlike *Boston Med. Ctr. Corp.*, the sender and receiver are *not* Massachusetts residents, and the MWA claim fails for this reason alone.

Next, Plaintiffs S.B. and A.O. argue that the alleged interceptions were secret because "Plaintiffs were not aware that their Private Information was intercepted and unlawfully disclosed to Facebook and other third parties[.]" ECF No. 30, Opp. at 20. But, as set forth in Aspen Dental's opening brief, Aspen Dental's website Privacy Policy discloses its use of Pixel technology: "We, our service providers, and our advertising partners may automatically log information about you, your computer, or mobile device, and your activity over time on our Site and on other sites and online services, such as the online identifiers, online activity information, and device information described in the table above [including individual identifiers and demographic information, commercial information and internet activity]." *See* Aspen Dental Privacy Policy https://www.aspendental.com/legal/privacy-policy/ (last visited June 3, 2024).[2] *Compare Doe v. The Children's Hosp. Corp.*, No. 2384CV00411-BLS1, at *8 (Suffolk Super Ct.) (Mem. & Ord., Dkt. No. 18, Sept. 15, 2023), ECF No. 30-3, Exh. C (finding privacy policy statement that defendant only collected personally identifiable information when "'knowingly provided by such individuals (e.g., web forms)' conflict[ed] with the actual interceptions alleged").

Lastly, Plaintiffs S.B. and A.O. argue that ordinary course of business exception does not apply. ECF No. 30, Opp. at 21. But despite Plaintiffs' contention to the contrary, *Dillon v. Massachusetts Bay Transportation Authority*, 49 Mass. App. Ct. 309 (2000), supports broad application of the exception. The *Dillon* court held a "deviation" from the literal wording of the

[2] Aspen Dental updated its website Privacy Policy on June 30, 2023. The prior version also disclosed that Aspen Dental gathered voluntarily disclosed personal information. *See* https://web.archive.org/web/20211012174400/https://www.aspendental.com/privacy-policy ("We do not use cookies to gather any personally identifiable information about you apart from what you voluntarily provide us in your dealings with us.")

MWA was justified where "unusual circumstances" are presented, and that the ordinary-course exception should be read "so as to preserve it in its intrinsic intended scope and maintain its viability in the broad run of cases." *Id.* at 315–16 (concluding that literal readings of the terms "communications common carrier" and "telephone equipment" do not limit applicability of the exception). Likewise, here, "the [Plaintiffs'] proposal would in effect destroy the exception" by considering website code an "intercepting device" while categorically excluding website code from the ordinary course of business exception. *Id.* at 315.[3]

### F. Plaintiff C.M.'s CIPA Claim Fails Because the Pixel Does Not Intercept Communications "In Transit."

Plaintiff C.M. argues that they sufficiently alleged interception "in transit" by alleging pixel technology "caus[es] the device to contemporaneously and invisibly re-direct Users' communications to third parties" and that Aspen Dental "employed" third party technology to "intercept, duplicate, and re-direct" their information. ECF No. 30, Opp. at 21. But courts have found that allegations like these are "entirely too speculative." *See Valenzuela v. Keurig Green Mountain, Inc.*, 674 F.Supp.3d 751, 758 (N.D. Cal. 2023) (dismissing CIPA claim; "Plaintiff provides a great deal of information about how *Meta* uses the data the third party obtains…. But the complaint provides no detail as to how the interception occurs."); *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1084 (C.D. Cal. 2023) (same; "Plaintiff's bare allegations that 'the third party ... secretly intercept[s] (during transmission and in real time)' is conclusory and does not allege specific facts as to how or when the interception takes place, which has been found to

[3] While not raised in Aspen Dental's opening brief, the applicability of the MWA is pending before the Massachusetts Supreme Judicial Court. *See Vita v. New Eng. Baptist Hosp., et al.,* No. SJC-13542 (Mass. 2024). Thus, the Court may choose to defer a ruling on this issue. *See Doe v. Tenet Healthcare Corp*., No. CV 23-12978-PBS, 2024 WL 1756075, at *6 (D. Mass. Apr. 23, 2024).

fall short of stating a plausible claim under section 631(a).”). Thus, Plaintiff C.M.’s CIPA claim should be dismissed.

### III. Plaintiffs’ Consumer Protection Act Claims Should Also Be Dismissed For Failure to Plausibly Allege Claims.

#### A. Illinois Plaintiffs Have Not Alleged Unfairness or Deception Under the Illinois Consumer Fraud and Deceptive Business Practices Act (“ICFA”).

Plaintiffs A.D., R.G., C.C. and K.F. argue that they adequately alleged deception and were personally deceived by Aspen Dental. ECF No. 30, Opp. at 23. But none of the cited allegations are specific to the named Plaintiffs. *See, e.g.,* ECF No. 7, Am. Compl. ¶ 480 (“*Plaintiffs and Class members* reasonably believed and expected that Defendant’s data security practices complied with relevant laws and regulations and were consistent with industry standards.”) (emphasis added). Rather, the representative plaintiffs’ factual allegations do not contain *any* allegations that they were ***personally deceived*** by any of Aspen Dental’s alleged deceptions. *See id.* at ¶¶ 300-306 (allegations specific to Plaintiff A.D.); *id.* at ¶¶ 307-313 (allegations specific to Plaintiff R.G.); *id.* at ¶¶ 342-348 (allegations specific to Plaintiff C.C.); *id.* at ¶¶ 349-355 (allegations specific to Plaintiff K.F.).

Plaintiffs A.D., R.G., C.C. and K.F.’s argument that although they did not make purchases from Aspen Dental’s free, public website, this “does not mean that they were not harmed,” is unpersuasive. ECF. No. 30, Opp. at 24. In the Seventh Circuit, to prevail on ICFA claims, plaintiffs must plead that defendants’ deceptive or unfair conduct “caused actual damages.” *Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 322 (7th Cir. 2021). The cases cited by Plaintiffs cannot overcome this requirement. In *Swiatek v. CVS Pharmacy, Inc.*, No. 23-CV-01523, 2024 WL 1328801 (N.D. Ill. Mar. 28, 2024), for instance, the court dismissed plaintiff’s ICFA claim for failure to allege actual damages “in a manner that tethers his subjective

estimation to some factual foundation") *Id.* at *6; *see also Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 648 (7th Cir. 2019) (dismissing ICFA claim because plaintiff's allegations that he "would not have purchased" a product but for defective advertising are insufficient to establish damages).

Citing no case law, Plaintiffs A.D., R.G., C.C. and K.F. argue PIPA applies broadly beyond data breaches. ECF No. 30, Opp. at 24. This position, however, is belied by their allegations in the Amended Complaint: alleging Aspen Dental "represented it would safeguard and protect" Plaintiffs' information and timely notify if their data were "breached and compromised or stolen." ECF No. 7, Am. Compl. ¶ 506; *see also id.* at ¶ 509 (PIPA requires data collectors notify residents when "there has been a breach of the security of the system data"); *id.* at ¶ 510 (alleging Aspen Dental violated PIPA by "failing to implement and maintain reasonable security measures" and failing to give "expedient notice"). Thus, PIPA cannot be used to prop up Plaintiffs' ICFA claim.

### B. Plaintiff E.W. Has Not Plausibly Alleged a Claim Under Washington Consumer Protection Act ("WCPA").

Plaintiff E.W. argues that they "possess a property interest in their Private Information[.]" ECF No. 30, Opp. at 25. But Plaintiff E.W.'s personal information does not qualify as lost property. *See Dinerstein v. Google, LLC*, 73 F.4th 502, 518 (7th Cir. 2023) (finding a patient does not have a property interest in their medical records; "they instead belong to the medical provider."); *Doe v. Meta Platforms, Inc.*, 2023 WL 5837443 at *15 (in analyzing whether the plaintiffs had been damaged in their "property" under California's Unfair Competition Law ("UCL") the court explained, "[c]ourts in this district have dismissed cases where, like here, the injury is based on the loss of the inherent value of their personal data.") (internal citations and quotations omitted). And courts routinely reject the "loss of value in PII" theory of injury where plaintiffs, like Plaintiff E.W. here, fail to allege they intended to participate in that market. *See,*

*e.g., Corona v. Sony Pictures Entm't, Inc*., No. 14-CV-09600 RGK EX, 2015 WL 3916744, *4 (C.D. Cal. June 15, 2023) (rejecting claim that "an individual's personal identifying information has any compensable value in the economy at large"); *Meta Platforms, Inc*., 2023 WL 5837443 at *15-17 (in analyzing whether the plaintiffs had been damaged in their "property" under the UCL, the court dismissed the plaintiffs' UCL claim "in light of the inconsistent allegations regarding how plaintiffs could *and* would participate in a legitimate market for health care information.") (emphasis original).

The cases cited by Plaintiff E.W. are distinguishable. The court in *Huong Hoang v. Amazon.com, Inc.*, No. C11–1709MJP, 2012 WL 1088165 (W.D. Wash. Mar. 30, 2012) found that plaintiff's allegation that the alleged "*harm to her career* caused by unauthorized publication of her age" was sufficient to allege injury. *Id.* at *6. Likewise, in *Buckley v. Santander Consumer USA, Inc.*, C17-5813 BHS, 2018 WL 1532671 (W.D. Wash. Mar. 29, 2018) the court found plaintiff's allegation that the intentional disclosure of her Social Security number and other personal information created an "unacceptable likelihood of being subject to identity theft[.]" *Id.* at *3. In other words, it was the alleged *monetary loss*, rather than the disclosure of information, that courts found was sufficient to allege injury.

Lastly, Plaintiffs argue that their WCPA claim should not be limited to Plaintiff E.W.'s allegations. ECF No. 30, Opp. at 26. However, in a class action, "named plaintiffs who represent a class must allege and show *they personally have been injured*." *Lewis v. Casey*, 518 U.S. 343, 347 (1996) (emphasis added). Because Plaintiff E.W. seeks to represent a class of Washington consumers, Plaintiff E.W.'s experience—not those experiences that are generically alleged on behalf of "Plaintiffs and Class Members" are relevant to this claim.

### C. Plaintiff C.M.'s Unfair Competition Law ("UCL") Claim Fails to Allege Loss of Money or Property.

Plaintiffs dismiss Aspen Dental's argument that Plaintiff C.M. fails to adequately allege facts showing their personal information was disclosed to third-parties. ECF No. 30, Opp. at 28. While Plaintiffs allege "disclosures" of "Private Information" throughout their Amended Complaint, these cursory allegations fail to explain what was exposed. *See, generally* ECF No. 7, Am. Compl. This is even more evident when examining Plaintiff C.M.'s specific allegations. Though Plaintiff C.M. alleges that they provided "first and last name, birth date, email address, phone number, and reason for visit," Plaintiffs do not allege what—if any—of this information was disclosed to third parties. *Id.* at ¶¶ 356-362. "Without more detailed allegations as to what "private information" was disclosed, how, and when it was disclosed, Plaintiffs' UCL claim fails." *Eisenhower*, 2024 WL 878100, at *6.

Plaintiff C.M. alleges that they were injured when their personal information was "wrongfully divulged and misused," and that they lost the "benefit of the bargain and diminution in the value of their Private Information." ECF No. 30, Opp. at 28. Yet the only plaintiff-specific allegation cited to in this argument is that Plaintiff C.M. saw targeted health ads on Facebook after visiting Aspen Dental's website. *Id.*; *see also* ECF No. 7, Am. Compl. ¶ 362. This is insufficient to allege an injury under the UCL. Even considering Plaintiffs' generic damage allegations, Plaintiffs have not adequately alleged a loss of money or property under the UCL. *See, e.g., Eisenhower*, 2024 WL 878100, at *6 ("Courts in this circuit have dismissed cases where, like here, the injury is based on 'the loss of the inherent value of their personal data,' as well as where it was undisputed that plaintiffs paid no money to the defendant."); *R.C. v. Walgreen Co.*, 2024 WL 2263395, at *17 (C.D. Cal. May 9, 2024) (finding "conclusory" allegations that plaintiffs "would not have used Defendant's services or would have paid considerably less for those services"

insufficient to sustain UCL claim); *Wesch v. Yodlee, Inc.,* No. 20-CV-05991-SK, 2021 WL 1399291, at *6 (N.D. Cal. Feb. 16, 2021) (dismissing UCL claim because plaintiffs did not adequately allege lost money or property as a result of defendant's alleged conduct); *C.M. v. MarinHealth Medical Group, Inc.*, 2024 WL 217841, at *2 (N.D. Cal. Jan. 19. 2024).

**D. Plaintiff C.M. Has Not Alleged a Disclosure of "Medical Information" Under the Confidentiality of Medical Information Act ("CMIA").**

Plaintiff C.M. argues in opposition that their "first and last name, birthdate, email address, phone number, reason for visiting Aspen, identifying cookies and IP address and the fact they were making appointments for specific medical conditions" are "medical information" under the CMIA. ECF No. 30, Opp. at 30. These data points, however, are insufficient to meet the definition of "medical information." "[M]edical information cannot mean just any patient-related information held by a health care provider, but must ... include 'a patient's medical history, mental or physical condition, or treatment.'" *Eisenhower Med. Ctr. v. Superior Ct.*, 226 Cal. App. 4th 430, 435 (2014). This information must be "substantive." *Id.* at 434. Plaintiff C.M. makes no such allegations here.

Moreover, Plaintiffs concede that they do not allege any disclosure of Plaintiff C.M.'s medical information. Instead, they merely point to their allegation that after providing personal information to Aspen Dental, they began seeing "targeted health ads" on Facebook and ask the Court to draw an inference that a disclosure occurred. ECF No. 30, Opp. at 31. Cases cited by Plaintiffs in support of their argument that "medical information" need not be "viewed" by a "human being" are distinguishable. In *Cousin v. Sharp Healthcare*, 2023 WL 8007350 (S.D. Cal. Nov. 17, 2023), the court found plaintiffs' allegation that "'Meta regularly viewed' the information" and information regarding Meta's business model were sufficient meet the allege a CMIA claim. *Id.* at *4. Here, however, Plaintiffs only reference to viewing of their personal

information is a generic allegation that with a user's Facebook ID, *anyone* can locate, access and view the user's profile. ECF No. 7, Am. Compl. ¶¶ 120, 162. In *Doe v. Regents of Univ. of California*, 672 F. Supp. 3d 813 (N.D. Cal. 2023), plaintiff alleged that after she entered medical information *into defendant's patient portal*, she began receiving targeted marketing. *Id.* at 819. Here, Plaintiff C.M. alleges providing information to Aspen Dental via its public website. *See Nienaber*, 2024 WL 2133709, at *6 (finding information submitted via defendant's public website was not personally identifiable information or protected health information).

## IV. Plaintiffs' Common Law Claims Must Be Dismissed.

### A. Plaintiffs' Negligence Claim Fails Because Illinois Has Not Recognized a Common Law Tort Claim for Alleged Breach of Physician-Patient Confidentiality.

Plaintiffs argue that "[t]he relationship between Plaintiffs and Defendant, coupled with Defendant's express promises to safeguard Plaintiffs' Private Information from unauthorized disclosures, establishes a duty of care under Illinois law." ECF No. 30, Opp. at 33. In support, Plaintiffs cite three cases, each of which arose out of a third-party data breach into the defendant's systems. *See Wittmeyer v. Heartland Alliance for Human Needs & Rights*, 2024 WL 182211, *1 (N.D. Ill. Jan. 17, 2024) ("alleging various claims that stem from a 2022 data breach"); *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 581 (N.D. Ill. 2022) ("During the data breach"); *Flores v. AON Corp.,* --- N.E.3d ----, 2023 IL App (1st) 230140, ¶ 5 ("three months after the data breach was discovered").

Plaintiffs here, however, do not allege Aspen Dental failed to protect their information from a third-party data breach. Plaintiffs instead allege a different type of claim altogether: that Aspen Dental itself intentionally disclosed their personal health information. ECF No. 7, Am. Compl. ¶ 194 ("Aspen purposefully disclosed Plaintiffs' and Class Members' sensitive health

communications, including Private Information, without their consent to Facebook to improve the effectiveness of its advertising and marketing"); *id.* at ¶ 254 ("Aspen improperly disclosed Plaintiffs' and Class Members' HIPAA identifiers"); *id.* at ¶ 459 (alleging Plaintiffs' PII and PHI "was disclosed to unauthorized third parties including Facebook and/or Google").

As shown in Aspen Dental's opening brief, however, Illinois law has not recognized a common law claim for an alleged breach of physician-patient confidentiality. *See Dinerstein v. Google*, 484 F.Supp.3d 561, 594-95 (N.D. Ill. 2020), *aff'd on other grounds* 73 F.4th 502, 516 n.4 (7th Cir. 2023). And the Seventh Circuit, like every other circuit to address the same point, has held that Congress did not intend for there to be a private right of action under HIPAA. *See Stewart v. Parkview Hospital*, 940 F.3d 1013, 1015 (7th Cir. 2019).

Plaintiffs also allege Aspen Dental's "express promises to safeguard their Private Information from unauthorized disclosures[] establishes a duty of care under Illinois law." ECF No. 30, Opp. at 33. Plaintiffs do not cite any case under Illinois law where alleged "express promises" were used to create a duty in negligence, as opposed to forming the basis for a contractual relationship.

In any event, as set forth in Aspen Dental's opening brief, Aspen Dental's website Privacy Policy discloses its use of Pixel technology. *See supra section II(E)*.

**B. Plaintiffs' Unjust Enrichment Claim Fails Because It Is Not a Standalone Claim.**

Plaintiffs misinterpret *Cleary v. Philip Morris, Inc.*, 656 F.3d 511 (7th Cir. 2011), which noted that, at the time, Illinois case law was unclear as to whether unjust enrichment was an independent cause of action before ultimately deciding that it was unnecessary to resolve the issue definitively because plaintiffs failed to allege an unjust enrichment claim. *Id.* at 518. Since then, the Seventh Circuit has consistently held that "[u]nder Illinois law, unjust enrichment is not a

separate cause of action. Rather, it is a condition brought about by fraud or other unlawful conduct." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739–40 (7th Cir. 2019) (cleaned up); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 447 ( 7th Cir. 2011); *Ass'n Benefit Servs. v. Caremark Rx, Inc.,* 493 F.3d 841, 855 (7th Cir. 2007) ("[W]here the plaintiff's claim of unjust enrichment is predicated on the same allegations of fraudulent conduct that support an independent claim of fraud, resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well."). Because Plaintiffs forfeited their breach of implied contract claim, their unjust enrichment claim necessarily fails as well.

### C. Plaintiffs Have Forfeited Their Remaining Claims.

Plaintiffs' opposition brief withdraws their claims for invasion of privacy, breach of implied contract, and violation of the Massachusetts Consumer Protection Act under Rule 12(b)(6). ECF No. 30, Opp. at 3, n. 5. These claims have now been forfeited and should be dismissed with prejudice. *See, e.g., Cruz v. Griebel*, 2021 WL 5321044, at *1 (N.D. Ill. Nov. 16, 2021) ("because Plaintiff's opposition brief fails to address the plausible legal grounded set forth by Defendants for dismissing the federal claims, Plaintiff has forfeited those claims") (citing *G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012)); *see also Boogard v. Nat'l Hockey League*, 255 F. Supp. 3d 753, 766 (N.D. Ill. 2017) (same).

## CONCLUSION

For the reasons and authorities set forth above, Defendant Aspen Dental Management, Inc. respectfully moves the Court to grant its motion to dismiss, with prejudice.[4]

[4] Aspen Dental has filed a motion for leave to exceed the 15-page limit for briefs, which remains pending. (ECF No. 32.)

Dated: June 5, 2024

Respectfully submitted,

*/s/ Bonnie Keane DelGobbo*
Joel Griswold
Bonnie Keane DelGobbo
BAKER & HOSTETLER LLP
One North Wacker Drive, Suite 3700
Chicago, Illinois 60606
(312) 416-6200 (phone)
(312) 416-6201 (fax)
jcgriswold@bakerlaw.com
bdelgobbo@bakerlaw.com

Melissa M. Bilancini (*pro hac vice* forthcoming)
Baker & Hostetler LLP
127 Public Square, Suite 2000
Cleveland, Ohio 44114
(216) 621-0200 (phone)
mbilancini@bakerlaw.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on June 5, 2024, a true and correct copy of the foregoing *Defendant Aspen Dental Management, Inc.'s Reply in Support of Its Rule 12(b)(6) Motion to Dismiss Plaintiffs' Amended Complaint* was served on counsel of record via the Court's electronic filing system.

*/s/ Bonnie Keane DelGobbo*
Bonnie Keane DelGobbo
*One of the Attorneys for Defendant*